CREMONTE v MICHIGAN STATE POLICE

Docket Nos. 195669, 195670. Submitted September 8, 1998, at Lansing. Decided October 20, 1998, at 9:00 A.M. Leave to appeal sought.

Thomas A. Cremonte brought actions in the Livingston Circuit Court and the Court of Claims against the Michigan State Police, his employer, alleging in the circuit court complaint that the defendant, in violation of the Civil Rights Act, MCL 37.2101 *et seq.*; MSA 3.548(101) *et seq.*, denied him promotion on the basis of his age or in retaliation for his opposition to policies of the defendant that discriminated against employees on the basis of age, race, and gender, and alleging in the Court of Claims complaint, for the same alleged conduct by the defendant, a violation of "public policy embodied in the Michigan and United States Constitutions" and a violation of equal protection under the state constitution. The parties stipulated to a joint trial, with the circuit court action tried before a jury. After five days of trial, the court, Daniel A. Burress, J., granted a motion by the plaintiff to amend the circuit court complaint to add claims of racial and gender discrimination. The jury found the defendant liable with regard to all claims and awarded the plaintiff damages. In the Court of Claims action, the court found the defendant liable for racial and gender, but not age, discrimination and awarded the plaintiff damages. The defendant appealed the jury verdict in the circuit court action and the award of damages in the Court of Claims action. The appeals were consolidated.

The Court of Appeals *held*:

1. The defendant did not raise at trial, and therefore failed to preserve for appellate review, its claim that the plaintiff did not show that he opposed a violation of the Civil Rights Act, as required under MCL 37.2701(a); MSA 3.548(701)(a).

2. The trial court abused its discretion by allowing the plaintiff to amend his circuit court complaint midtrial. Pleadings may be amended to conform to evidence introduced at trial only where issues not raised by the pleadings are tried by express or implied consent of the parties, MCR 2.118(C)(1), or, if evidence is objected to at trial on the ground that it is not within the issues raised by the pleadings, where the party seeking amendment satisfies the

court that the amendment and the admission of evidence will not prejudice the objecting party in its action or defense, MCR 2.118(C)(2). Here, the defendant did not consent to amendment of the complaint and the plaintiff did not show that the defendant would not be prejudiced by amendment.

3. The trial court erred in awarding damages for a violation of the state constitution. While the propriety of an inferred damage remedy arising directly from violations of the state constitution has been recognized in *Smith v Dep't of Public Health*, 428 Mich 540 (1987), aff'd sub nom *Will v Michigan Dep't of State Police*, 491 US 58; 109 S Ct 2304; 105 L Ed 2d 45 (1989), the availability in this case of a remedy under the Civil Rights Act obviates any need for an inferred damage remedy.

Circuit court jury verdict reversed and circuit court case remanded for new trial; Court of Claims award of damages reversed.

1. PLEADINGS — MIDTRIAL AMENDMENT OF PLEADINGS — COURT RULES.

A party whose evidence is objected to at trial on the ground that it is not within the issues raised by the pleadings is not allowed to amend its pleadings to conform the pleadings to the evidence unless the party satisfies the trial court that the amendment and the admission of the evidence will not prejudice the objecting party in its action or defense (MCR 2.118[C][2]).

2. CIVIL RIGHTS — CIVIL RIGHTS ACT — EMPLOYMENT DISCRIMINATION — DAMAGES — MICHIGAN CONSTITUTION.

A damage remedy for violations of the state constitution may be inferred from the constitution in certain cases; no inferred remedy applies to claims of employment discrimination based on age, race, or gender or to claims of retaliation for opposing discriminatory employment practices or policies in view of remedies available under the Civil Rights Act (Const 1963, art 1, § 2; MCL 37.2101 *et seq.*; MSA 3.548(101) *et seq.*).

*Malley & Fett, P.C.* (by *James K. Fett* and *Marla A. Linderman*), for the plaintiff.

*Frank J. Kelley*, Attorney General, *Thomas L. Casey*, Solicitor General, and *Richard P. Gartner*, Assistant Attorney General, for the defendant.

Before: JANSEN, P.J., and NEFF and O'CONNELL, JJ.

O'CONNELL, J. This is an employment discrimination and retaliation case. In Docket No. 195669, defendant appeals a jury verdict in favor of plaintiff. We reverse and remand. In Docket No. 195670, defendant appeals the trial court's damage award in the Court of Claims action. We reverse.

The facts relevant to this appeal are fairly straightforward. Plaintiff is a white male and has been a Michigan State Police Trooper since 1977. Although he has been eligible for promotion for a number of years, he has not been promoted. In the years preceding this suit, plaintiff derided his superiors for hiring and promoting employees pursuant to an affirmative action program.[1] He also wrote a memo questioning

---

[1] Several of plaintiff's writings were introduced at trial. These writings included statements regarding affirmative action. One statement came from plaintiff's evaluation of a State Police instructor:

Once again our department is using officers with far too little experience to teach programs which relate to patrols. I respect only those that I know in my own mind are qualified to teach those areas. Those promoted under the auspices of "affirmative action" are not worthy of respect, or my attention. Having been a 21 yr resident of Detroit I did not appreciate [the instructor] ridiculing the Detroit Police tactics of the 60's. When I was a kid I could walk the streets of Detroit and was safe. S.T.R.E.S.S. and the "Big Four," both of which [the instructor] attacked were responsible for the safe streets. Its [sic] very evident that Coleman Young and "Affirmative Action" have turned the streets into a "War Zone."

Another statement came from a memo plaintiff wrote to the Director of the Michigan State Police:

We have seen many changes in the 80's. Experience, maturity, leadership, and capability are no longer used as a consideration for promotion. Mediocrity and affirmative action are the standard. Those that deserve the least reap the most. Gone are the days of promoting the most qualified person for that position. Affirmative action has given us a new breed of manager, one who thinks that people skills is a training program for the unemployed, and a leader is something which is put on the end of a fishing pole.

his superiors' use of seniority as a factor in promotion decisions, arguing that low seniority troopers were being promoted more often than high seniority troopers. During this time, defendant was hiring and promoting pursuant to an affirmative action program. Defendant was also participating in a system of "augmented certification," that, in certain circumstances, gave favorable treatment to women and minorities.[2]

Plaintiff originally filed a complaint in the Livingston Circuit Court alleging that the Michigan State Police failed to promote him on the basis of his age or in retaliation for his opposition to Michigan State Police policies that discriminated against certain employees on the basis of their age, race, and gender. Plaintiff also filed a Court of Claims complaint alleging a violation of "the public policy embodied in the Michigan and United States Constitutions" and a violation of equal protection under the Michigan Constitution. The parties stipulated joinder of the two actions, with the circuit court action to be decided by a jury and the Court of Claims action to be decided by the circuit judge. During the trial, plaintiff amended his circuit court complaint to add claims of race and gender discrimination. At trial, plaintiff argued that he has not been promoted because he opposed violations of the Civil Rights Act, MCL 37.2101 *et seq.*; MSA 3.548(101) *et seq.*, and because of his age, race, and gender. Defendant argued that plaintiff was not promoted because he did not have the qualities of a leader. Using a special-verdict form,

---

[2] The whole process of augmented certification is somewhat complex. While this issue occupied a great deal of time at trial, it is not relevant to this appeal, and we will not attempt to describe it here.

the jury found defendant liable on all claims and awarded plaintiff $850,000 in damages. In the Court of Claims action, the trial court found defendant not liable on plaintiff's public policy and age claims, but found defendant liable for race and gender discrimination in violation of the Michigan Constitution, and awarded plaintiff $850,000.[3] The trial court then added costs and interest to both awards, and attorney fees to the circuit court award.

DOCKET NO. 195669

On appeal, defendant first argues that plaintiff failed to prove a prima facie case of retaliation. Defendant contends that plaintiff did not show that he opposed a violation of the Civil Rights Act, as required under MCL 37.2701(a); MSA 3.548(701)(a). While it appears that this argument has merit,[4] defendant failed to raise it below.[5] Thus, this issue is

---

[3] The trial court and the parties apparently agreed that plaintiff was not entitled to collect both awards. This was obviously correct, because collection of both awards would have given plaintiff a double recovery.

[4] The Civil Rights Act protects those who seek redress for civil rights violations. Pursuant to the act, an employer may not "[r]etaliate or discriminate against a person because the person has opposed a violation of this act." MCL 37.2701(a); MSA 3.548(701)(a). In reviewing the record, we found no evidence that plaintiff "opposed a violation" of the Civil Rights Act. Plaintiff's writings to his superiors did not raise the specter of a discrimination complaint, nor did they contain any hint of any illegality on the part of defendant. Indeed, the writings can, at best, be interpreted as plaintiff's expression of disagreement with defendant's employment practices. We do not believe that the protections of the Civil Rights Act extend to such statements. Compare *McLemore v Detroit Receiving Hosp*, 196 Mich App 391, 396; 493 NW2d 441 (1992). See also *Booker v Brown & Williamson Tobacco Co, Inc*, 879 F2d 1304, 1311-1314 (CA 6, 1989).

[5] Defendant should have raised this issue in its motion for a directed verdict. At the very least, defendant should have filed a motion for judgment notwithstanding the verdict or a motion for a new trial.

unpreserved, and we will not review it. *Napier v Jacobs*, 429 Mich 222, 237-238; 414 NW2d 862 (1987).

Defendant next argues that the trial court abused its discretion in allowing plaintiff to amend his complaint midtrial. We agree.

MCR 2.118(C) provides for the amendment of pleadings to conform to the evidence introduced at trial:

> (1) When issues not raised by the pleadings are tried by express or implied consent of the parties, they are treated as if they had been raised by the pleadings. In that case, amendment of the pleadings to conform to the evidence and to raise those issues may be made on motion of a party at any time, even after judgment.
>
> (2) If evidence is objected to at trial on the ground that it is not within the issues raised by the pleadings, amendment to conform to that proof shall not be allowed unless the party seeking to amend satisfies the court that the amendment and the admission of the evidence would not prejudice the objecting party in maintaining his or her action or defense on the merits. The court may grant an adjournment to enable the objecting party to meet the evidence.

Our Supreme Court has addressed the difference between amendments before trial and amendments during trial:

> MCR 2.118(C)(2) establishes strict requirements for amending a pleading during trial. Unless the party requesting amendment "satisfies the court that . . . amendment . . . would not prejudice the objecting party," amendment "shall not be allowed." This rule contrasts sharply with the free amendment allowed before trial. [*Dacon v Transue*, 441 Mich 315, 333; 490 NW2d 369 (1992). ]

Here, the trial court allowed plaintiff to amend his complaint on the basis of a motion brought after five days of trial. In granting the motion, the trial court placed a great deal of emphasis on the fact that the parties both referenced race and gender claims in their opening statements. According to the trial court, plaintiff's counsel "opened the door" to race and gender claims in his opening argument, and defendant failed to object. The trial court also focused on defense counsel's statements at the beginning of the third day of trial. At that time, defense counsel essentially stated that he had always perceived the case as a reverse discrimination case, but, after reviewing the pleadings, he realized that plaintiff was claiming only age discrimination and retaliation. The trial court felt that defense counsel's statements were crucial: "It appears to me from my recollection now that there was a defining moment in this case, and I can't remember what day that was, where [defense counsel] came in and said, I had a chance to really look at this case. And I was trying something different than what [plaintiff alleged in his complaint]." The trial court apparently concluded that defense counsel was prepared to defend against claims of race and gender discrimination.

After discussing the amendment during the sixth day of trial, a Wednesday, the trial court put the matter off and finished the day's testimony. There was no action on the case on Thursday, and on Friday morning the parties came in to further argue the motion to amend. Plaintiff's attorney essentially argued that, on the basis of defense counsel's statements on the third day of trial, defendant was not "in a position to argue that they were actually prejudiced." Defense counsel

responded: "[W]hen I prepared for that opening statement I had corrected my erroneous belief and no longer thought it was [a race and gender case]." The trial court continued its focus on the opening statements, asking defense counsel: "Do you agree that it was laid out in the opening statements it was clearly laid out in that fashion to the jury?"

After listening to both attorneys, the trial court questioned defense counsel: "Mr. Gartner, if I were to grant the motion, tell me how you would be prejudiced and what you would need to cure that prejudice." After additional arguments, the trial court granted the motion:

> Rule 2.118 (C)(1) [and] (2) take a liberal approach towards conforming the pleadings to the proofs, and they include safety valves of prejudice. In this case, it's clear to me that the issue [sic] of retaliation, age, gender, sex, race was [sic] clearly laid on the table, and in the Plaintiff's opening statement not objected to by the Defendant; and, in fact, responded to by the Defendant in their [sic] opening statement.
>
> The case was really being tried on those issues until what I call the moments of enlightenment came on this record, at least which would be February 2nd, 1996 after we had gone through a number of witnesses when the matter was brought up by [defense counsel].
>
> I am satisfied that substantial justice can be achieved and complete relief as it relates to this case can be submitted to the jury. I'm going to allow the amendment as indicated.

The trial court went on to describe the remedial measures it would allow defendant to use to "shore up the defense." The court also noted that the trial was being delayed for one week anyway, because of the judge's and jurors' schedules, which would give the defense time to prepare.

The trial court applied the wrong analysis and standard in granting plaintiff's motion. In focusing on the opening statements, the trial court was apparently trying to apply MCR 2.118(C)(1). In other words, the trial court was trying to decide whether defendant had impliedly consented to the additional claims. This was improper, because defense counsel made it clear on the third day of trial that he was not consenting to the trial of race and gender issues. In fact, defense counsel vigorously opposed the introduction of evidence on those issues. When plaintiff brought his motion to amend two days later, any "implied consent" had long since been revoked. Thus, MCR 2.118(C)(1) was inapplicable.

The trial court's statement that MCR 2.118(C)(2) "takes a liberal approach" toward amendments was clearly incorrect as a matter of law. As noted above, our Supreme Court has made it clear that MCR 2.118(C)(2) establishes strict requirements that must be met by the party requesting amendment. *Dacon, supra* at 333. Otherwise, the amendment "shall not be allowed." *Id.* The trial court compounded its error by asking defendant to establish the nature and extent of any prejudice, when the court rule clearly places that burden entirely on the party requesting amendment, in this case, plaintiff.

After a thorough review of the record, it is clear that plaintiff did not meet the requirements of MCR 2.118(C)(2), and we conclude that the trial court abused its discretion in granting plaintiff's motion to amend. Plaintiff argues on appeal that defendant could not have been surprised by the amendment and that defendant was not prejudiced by it. First, we note that this argument is not especially convincing

coming from the party who had the ability to avoid this issue by simply amending before trial. Second, it is clear that the addition of race and gender claims changed the nature of the case. The added claims placed new factual questions at issue[6] and changed the import of evidence that had already been admitted.[7] Under these circumstances, plaintiff could not have shown an absence of prejudice to defendant. As our Supreme Court has recognized, " 'litigation may proceed to a point where the opposing party cannot reasonably be expected to defend against the amendment; this is an especially pertinent factor on the eve of, during, or after trial.' " *Weymers v Khera*, 454 Mich 639, 659; 563 NW2d 647 (1997) (quoting *Ben P Fyke & Sons v Gunter Co*, 390 Mich 649, 663; 213 NW2d 134 [1973]). In this case, litigation had proceeded well past the point where defendant could reasonably have been expected to defend against plaintiff's

---

[6] For example, before the amendment, plaintiff only had to show that he had a "good faith belief" that defendant was violating the Civil Rights Act. In addition, plaintiff did not have to show that defendant was discriminating against him on the basis of his race or gender; he could show that he opposed discrimination against others. After the amendment, plaintiff had to show that defendant was actually discriminating against him on the basis of his race or gender. In addition, the change in factual issues also changed the available defenses. Because defendant was acting pursuant to an affirmative action policy, there is at least a possibility that it is immune from liability on plaintiff's race and gender claims. See MCL 37.2210; MSA 3.548(210); *Victorson v Dep't of Treasury*, 439 Mich 131, 137-146; 482 NW2d 685 (1992). See also *Kulek v Mount Clemens*, 164 Mich App 51, 64-65; 416 NW2d 321 (1987).

[7] For instance, the trial court admitted a statement suggesting that a State Police supervisor had to hire "a black and a woman" for certain positions. At the time the evidence was introduced, it was admitted to show only that plaintiff believed that defendant was discriminating on the basis of race and gender. After the amendment, however, this evidence became directly relevant for its truth.

amendment. Therefore, we reverse the jury verdict in Docket No. 195669 and remand for a new trial.[8]

DOCKET NO. 195670

Defendant argues that the trial court erred in awarding plaintiff monetary damages for a constitutional violation. We agree.

In a splintered opinion, our Supreme Court has addressed the question whether a plaintiff may sue the state for damages for a violation of the Michigan Constitution. *Smith v Dep't of Public Health*, 428 Mich 540; 410 NW2d 749 (1987), aff'd sub nom *Will v Michigan Dep't of State Police*, 491 US 58; 109 S Ct 2304; 105 L Ed 2d 45 (1989). After a thorough review of United States Supreme Court decisions on point, two justices declined to find such a remedy. *Id.* at 612-632 (Justice BRICKLEY, joined by Chief Justice RILEY). However, four other justices "would recognize the propriety of an inferred damage remedy arising directly from violations of the Michigan Constitution in certain cases." *Id.* at 647 (Justice BOYLE, joined by Justice CAVANAGH), 658 (Justice ARCHER, joined by Justice LEVIN). While the Court did not precisely identify which cases would justify an inferred damage remedy, Justice BOYLE offered some guidance:

---

[8] We believe that a new trial on plaintiff's age and retaliation claims is required. Once the motion to amend was erroneously granted, defendant was forced to dedicate time and resources during the remainder of the trial to combat the new claims. This obviously forced defense counsel to shift their focus away from the elements of a prima facie case of age discrimination or retaliation, which, as noted in footnote 3, were apparently lacking, and focus instead on the new claims of race and gender discrimination. Under these circumstances, affirming any part of the jury's verdict would be inequitable, because affirmance would allow plaintiff to benefit indirectly from the belated, improper amendment of plaintiff's complaint.

> We would recognize the propriety of an inferred damage remedy arising directly from violations of the Michigan Constitution in certain cases. As the *Bivens* [*v Six Unknown Federal Narcotics Agents*, 403 US 388, 407; 91 S Ct 1999; 29 L Ed 2d 619 (1971)] Court recognized, there are circumstances in which a constitutional right can only be vindicated by a damage remedy and where the right itself calls out for such a remedy. On the other hand, there are circumstances in which a damage remedy would not be appropriate. The absence of any other remedy would, as in *Bivens*, heighten the urgency of the question. Justice Harlan, concurring in *Bivens*, states that "[t]he question then, is, as I see it, whether compensatory relief is 'necessary' or 'appropriate' to the vindication of the interest asserted." 403 US 407. In answering this question in the positive, Justice Harlan commented, "[f]or people in Bivens' shoes, it is damages or nothing." *Id.*, p 410. Where a statute provides a remedy, the stark picture of a constitutional provision violated without remedy is not presented. [*Id.* at 647.]

Justice BOYLE went on to look at other factors that might weigh for or against an inferred damage remedy. One of those factors calls for a court "to consider the text, history, and previous interpretations of the specific provision for guidance on the propriety of a judicially inferred damage remedy. The provision itself may commit creation of a remedy to the Legislature rather than the courts." *Id.* at 650-651.

Art 1, § 2 of the Michigan Constitution of 1963 states:

> No person shall be denied the equal protection of the laws; nor shall any person be denied the enjoyment of his civil or political rights or be discriminated against in the exercise thereof because of religion, race, color or national origin. The legislature shall implement this section by appropriate legislation.

The last line of the section certainly weighs against an inferred damage remedy.[9] Indeed, that sentence alone could be viewed as dispositive of this issue. See *Smith, supra* at 632 (opinion of BRICKLEY, J.). In addition, the availability of a remedy under the Civil Rights Act obviates any need for an inferred damage remedy in age, race, or gender discrimination cases, or in retaliation cases. Here, plaintiff could, and did, file a Civil Rights Act action against defendant. Thus, we have no trouble concluding that this was not an appropriate case in which to infer a damage remedy. For this reason, we must reverse the trial court's damage award in Docket No. 195670.

Docket No. 195669: Reversed and remanded for a new trial. We do not retain jurisdiction.

Docket No. 195670: The trial court's damage award is reversed.

---

[9] Plaintiff cites *Johnson v Wayne Co*, 213 Mich App 143; 540 NW2d 66 (1995), for the proposition that this Court has already recognized the existence of such a remedy. However, the panel in *Johnson* did not directly address this issue.