*Michigan Supreme Court*
*Lansing, Michigan 48909*

# Opinion

Chief Justice
**Maura D. Corrigan**

Justices
**Michael F. Cavanagh**
**Elizabeth A. Weaver**
**Marilyn Kelly**
**Clifford W. Taylor**
**Robert P. Young, Jr.**
**Stephen J. Markman**

**FILED JULY 17, 2001**

BARRY A. LEWIS,

 Plaintiff-Appellant,

v              No. 114241

STATE OF MICHIGAN,

 Defendant-Appellee.

_____

BEFORE THE ENTIRE BENCH

TAYLOR, J.

This case presents the question whether a judicially inferred private cause of action should be recognized against the state for violation of Const 1963, art 1, § 2, the Equal Protection Clause of the Michigan Constitution. We conclude that we should not recognize such a cause of action because the plain language of this constitutional provision leaves its implementation to the Legislature. Thus, we affirm the

judgment of the Court of Appeals, although we clarify the appropriate rationale for resolving this case.

I.  Underlying Facts and Procedural History

Plaintiff, a white male, became a trooper with the Michigan State Police in 1973.  The State Police did not promote plaintiff to the position of sergeant.

Plaintiff alleges that the State Police discriminated against him on the basis of race and sex in violation of the Michigan Constitution, Const 1963, art 1, § 2, by using affirmative action policies in connection with promotional decisions. Specifically, plaintiff attacks the "augmentation" policy used by the State Police until June 27, 1994.  Under the augmentation policy, the State Police would, in certain circumstances, give preferential treatment to minority and female candidates in connection with eligibility for promotions.[1]  In addition, plaintiff alleged that the State

_____

[1]In short, the parties agree that individual troopers were placed into three "bands" on the basis of the promotional examination with those with the highest scores referred to as being in the first band.  Generally, only troopers in the first band were considered for promotion to sergeant.  However, if there was an "insufficient" number of women and minorities in the first band, then women and minorities from the second band (the middle range) of test scores would be added to the list of troopers to be considered for promotion.  White males, such as plaintiff, who scored in the second band would not be added to the list of those to be considered for promotions.

2

Police gave favorable consideration to female and minority status in selecting individuals for promotion to sergeant even apart from the augmentation policy. Indeed, Michigan State Police Colonel Michael Robinson acknowledged in deposition testimony that race and gender were considered with a "multitude of [other] factors" in filling vacant positions. The affirmative action plans of the State Police were approved by the Michigan Civil Rights Commission.

In pertinent part, plaintiff brought this case to seek money damages from the state for violation of his right under the Michigan Constitution to be free of race and sex discrimination by the state. The trial court eventually ruled in favor of plaintiff on his claim for money damages for violation of the Michigan Constitution, awarding damages of over $300,000. The Court of Appeals peremptorily reversed the trial court on the basis of its earlier decision in *Cremonte v Michigan State Police,* 232 Mich App 240; 591 NW2d 261 (1999). Like the present case, *Cremonte* involved a claim for money damages against the state for discrimination in violation of Const 1963, art 1, § 2 because of affirmative action policies followed by the State Police. The Court of Appeals in *Cremonte* held that that case was not an appropriate one in which to infer such a damage remedy. *Cremonte, supra* at 252.

3

## II. Analysis

### A. *Cremonte*

The Court of Appeals panel in this case simply relied on *Cremonte* in reversing the award of money damages in favor of plaintiff. *Cremonte* involved facts that are virtually identical to those of the present case. The plaintiff was also a white male trooper who had not been promoted by the State Police for a number of years. *Id.* at 242. In pertinent part, the plaintiff argued that affirmative action policies used by the State Police constituted race and sex discrimination in violation of Const 1963, art 1, § 2. *Cremonte, supra* at 243. Although the lower court in *Cremonte* held in favor of the plaintiff and awarded money damages, the Court of Appeals reversed and held that the facts of *Cremonte* did not support imposition of a judicially inferred damage remedy for violation of Const 1963, art 1, § 2:

> The last line of [Const 1963, art 1, § 2] certainly weighs against an inferred damage remedy. Indeed, that sentence alone could be viewed as dispositive of this issue. See *Smith* [*v Dep't of Public Health,* 428 Mich 540, 632; 410 NW2d 749 (1987) (Brickley, J.).] In addition, the availability of a remedy under the Civil Rights Act obviates any need for an inferred damage remedy in age, race, or gender discrimination cases, or in retaliation cases. Here, plaintiff could, and did, file a Civil Rights Act action against defendant. Thus, we have no trouble concluding that this was not an appropriate case in which to infer a damage remedy. [*Cremonte, supra* at 252.]

4

As we will discuss below, we agree that the language of the last sentence of Const 1963, art 1, § 2 weighs against recognition of a judicially adopted damages remedy for violation of that constitutional provision. Accordingly, we conclude today that this portion of Const 1963, art 1, § 2, commonly referred to as the state Equal Protection Clause, precludes us from adopting such a judicially crafted remedy. Thus, we agree with the result in *Cremonte*.

However, we disagree with the reliance by the Court of Appeals in *Cremonte* on the potential availability of a remedy under the state Civil Rights Act, MCL 37.2101 *et seq.* As an initial matter, we note that there is no such remedy, because the "safe harbor" provision of the Civil Rights Act, MCL 37.2210,[2] gives immunity from liability under the Civil Rights Act to an entity carrying out such an affirmative action plan if it has been approved by the Civil Rights Commission. See *Sharp v City of Lansing,* 464 Mich ___; ___ NW2d ___ (2001). The affirmative action plan challenged by plaintiff here was undertaken pursuant to such an approval, and, as a result,

---

[2]

A person subject to this article may adopt and carry out a plan to eliminate present effects of past discriminatory practices or assure equal opportunity with respect to religion, race, color, national origin, or sex if the plan is filed with the commission under rules of the commission and the commission approves the plan.

there could never be a remedy under the state Civil Rights Act. Thus, this unattainable remedy should not be a part of the justification for precluding a plaintiff from an inferred damages remedy under Const 1963, art 1, § 2. More importantly, as will be explained below, the existence or lack of an available remedy is irrelevant in this context, because the constitutional provision at issue expressly assigns the responsibility of implementation to the Legislature.

### B. Dedication of Implementation of Const 1963, art 1, § 2 to Legislature

In *Smith v Dep't of Public Health, supra*, this Court considered arguments that it should judicially recognize causes of action against the state for violation of the Michigan Constitution. *Smith* involved two consolidated cases with differing allegations of state constitutional violations. The only majority opinion in *Smith* was a brief memorandum opinion summarizing the holdings on which at least four justices agreed. In pertinent part, *Smith* held that, "[a] claim for damages against the state arising from violation by the state of the Michigan Constitution may be recognized in appropriate cases." *Id.* at 544. This brief majority opinion did not define what constitutes an "appropriate" case for recognizing such a cause of action for violation of the

Michigan Constitution. Regardless of whether an "appropriate" case may be conceived, we conclude that it is inappropriate to infer a damages remedy for violation of Const 1963, art 1, § 2.

The reason it is inappropriate to infer such a damages remedy, simply stated, is the language of Const 1963, art 1, § 2:

> No person shall be denied the equal protection of the laws; nor shall any person be denied the enjoyment of his civil or political rights or be discriminated against in the exercise thereof because of religion, race, color or national origin. *The legislature shall implement this section by appropriate legislation.* [Emphasis added.]

On its face, the implementation power of Const 1963, art 1, § 2 is given to the Legislature. Because of this, for this Court to implement Const 1963, art 1, § 2 by allowing, for example, money damages, would be to arrogate this power given expressly to the Legislature to this Court. Under no recognizable theory of disciplined jurisprudence do we have such power.

Moreover, our conclusion that the language of Const 1963, art 1, § 2 does not allow us to judicially create a money damages remedy for a violation of this constitutional provision is consistent with the view expressed by Justice Brickley, joined by Justice Riley, in *Smith*:

7

[T]hose sections of the 1963 Constitution, comparable to the provisions of the 1908 Constitution under which plaintiff sued, indicate that we should defer to the Legislature the question whether to create a damages remedy for violations of a plaintiff's rights to due process[3] or equal protection. For example, the Equal Protection Clause of the 1963 Constitution (art 1, § 2) leaves its implementation to the Legislature. [*Id*. at 631-632).][4]

Furthermore, it is the pattern of the Michigan Constitution with regard to the protection of civil rights to provide the Legislature with authority to create remedial measures. This can be seen in the provision of the Michigan Constitution that creates the Civil Rights Commission (Const 1963, art 5, § 29[5]) where the drafters, after creating the

---

[3]We do not address whether a judicially inferred damages remedy is ever appropriate under the Due Process Clause of the Michigan Constitution, Const 1963, art 1, § 17, inasmuch as the present case does not involve such a claim.

[4]Similar reasoning is found in *77th Dist Judge v Michigan,* 175 Mich App 681; 438 NW2d 333 (1989) (holding that it was error to grant damages for equal protection violation involving disparate pay for state district court judges). The Court of Appeals panel in *77th Dist Judge* observed:

> [W]e note, as did [Justice Brickley] in *Smith,* that provision in Const 1963, art 1, § 2 empowering the Legislature to implement enforcement mechanisms for equal protection. This reinforces judicial reluctance on our part to sanction a damages remedy. [Id. at 696.]

[5]This constitutional provision states:

> There is hereby established a civil rights commission . . . . It shall be the duty of the

(continued...)

**8**

Civil Rights Commission, then indicated that its investigations and efforts to secure equal protection of civil rights "may be prescribed by law," i.e., prescribed by the Legislature. The instant civil rights provision also follows that approach and, thus, reinforces our confidence that the drafters consistently intended that these rights, which were coming to flower in the early 1960's, were to be implemented after legislative consideration of the most appropriate remedies.

Finally, our holding should not be construed as a demurral to the traditional judicial power to invalidate legislation or other positive governmental action that directly violates the equal protection guarantee of Const 1963, art 1, § 2.[6] There is obviously a distinction between

---

[5](...continued)
commission *in a manner which may be prescribed by law* to investigate alleged discrimination against any person because of religion, race, color or national origin in the enjoyment of the civil rights guaranteed by law and by this constitution, and to secure the equal protection of such civil rights without such discrimination. [Emphasis added.]

[6] We make this observation primarily to preclude any misinterpretation of this opinion as calling into question the ability of Michigan courts to review legislation for its validity under the state Equal Protection Clause. This case does not require us to actually decide whether injunctive relief is available against other positive governmental action that may violate this constitutional provision. Rather, that question is addressed in this Court's decision in *Sharp,*

(continued...)

a judicial decree *invalidating* unconstitutional governmental action and the adoption of judicially created doctrines that effectively serve as de facto statutory enactments to implement Const 1963, art 1, § 2.  The former is classic judicial review recognized as a core judicial function since, at least, the decision in *Marbury v Madison,* 5 US (1 Cranch) 137; 2 L Ed 60 (1803).  The latter is an improper usurpation of legislative authority.  To fail to heed this limitation on judicial power would be to fail "to maintain the separation between the Judiciary and the other branches . . . by ensuring that judges do not encroach upon executive or legislative authority or undertake tasks that are more properly accomplished by those branches."  *Morrison v Olson,* 487 US 654, 680-681; 108 S Ct 2597; 101 L Ed 2d 569 (1988). Accordingly, when the political branches of state government affirmatively act by adopting legislation or otherwise, we may, in keeping with the traditional judicial role, review that action to determine if it is unconstitutional.  Until that time, however, we cannot go further.

Given the language of the Michigan Constitution, we hold in this case that we are without proper authority to recognize

[6](...continued)
*supra,* which is being released today.  For the reasons discussed in *Sharp,* we disagree with Justice Kelly's position on that question and see no need to repeat the extended analysis of that matter in this opinion.

**10**

a cause of action for money damages or other compensatory relief for past violations of Const 1963, art 1, § 2.[7]

The judgment of the Court of Appeals is affirmed.[8]

CORRIGAN, C.J., and CAVANAGH, WEAVER, YOUNG, and MARKMAN, JJ., concurred with TAYLOR, J.

---

[7]We note that plaintiff's statement of the question presented in this case refers to the possible availability of a private cause of action under Const 1963, art 11, § 5. However, plaintiff offers no argument about why such a cause of action should be recognized. In any event, Const 1963, art 11, § 5 states that "[v]iolation of any of the provisions hereof may be restrained or observance compelled by injunctive or mandamus proceedings brought by any citizen of the state." This express reference to injunctive and mandamus remedies implies that a money damages remedy is not directly available for a violation of Const 1963, art 11, § 5.

[8]As discussed earlier, the Court of Appeals reversed and remanded for further proceedings consistent with *Cremonte, supra.* While we disagree with part of the rationale in *Cremonte,* we agree with its holding. Thus, we do not need to modify the order entered by the Court of Appeals in the present case.

# S T A T E   O F   M I C H I G A N

## SUPREME COURT

BARRY A. LEWIS,

    Plaintiff-Appellant,

v                                         No. 114241

STATE OF MICHIGAN,

    Defendant-Appellee.

_____

KELLY, J. (*concurring in part and dissenting in part*).

I agree with today's holding that we should not recognize a cause of action for money damages or other compensatory relief for past violations of the Equal Protection Clause of the Michigan Constitution.[1] I also support much of the supporting rationale.

However, I disagree with the apparent dictum suggesting that a party can pursue equitable relief directly under the constitution where it conflicts with the safe-harbor provision

---

[1] Const 1963, art 1, § 2.

in the Michigan Civil Rights Act (CRA).[2] To the extent that the majority holding represents such a proposition, I dissent.

The majority remarks that its holding is not a "demurral to the traditional judicial power to invalidate legislation or other positive governmental action that directly violates the equal protection guarantee of Const 1963, art 1, § 2." *Ante* at 9. Of course, I do not take issue with the general proposition that the constitution may offer certain equitable relief when not preempted by a statutory remedial scheme. See *Sharp v City of Lansing*, 464 Mich ___; ___ NW2d ___ (2001) (KELLY, J., dissenting).

It concerns me, however, that the majority appears to conclude that equitable relief remains available to remedy harms covered by a comprehensive remedial scheme, such as title VII and our own CRA.[3] Moreover, the present case does not require a response from the Court on this question.

Therefore, to the extent the majority casts its holding to sanction claims for equitable relief under the constitution in avoidance of a comprehensive legislative remedial scheme, I dissent. I oppose circuitous measures for pleading around

---

[2]MCL 37.2210.

[3]See *Great American Savings & Loan Ass'n v Novotny*, 442 US 366; 99 S Ct 2345; 60 L Ed 2d 957 (1979), holding a constitutional equal protection claim unavailable to the plaintiff where the cause of action is contemplated under title VII.

the detailed, clear requirements of the CRA, itself enacted in furtherance of the will of Michigan citizens as evidenced in art 1, § 2.