Markman, J.
I concur in the result reached by the majority because I agree that § 210 shields a public employer with an affirmative action plan properly approved by the Civil Rights Commission from liability under the Michigan Civil Rights Act, MCL 37.2101 *815 et seq., but not necessarily from Lability under the Equal Protection Clause of the Michigan Constitution, Const 1963, art 1, § 2. Cf., however, Lewis v Michigan, 464 Mich 781; 629 NW2d 868 (2001). Furthermore, I agree with the analysis set forth by the majority in reaching this conclusion.
However, I write separately to observe that, in order for an affirmative action plan to be properly approved by the Civil Rights Commission, it must comply fully with the requirements set forth in § 210. Section 210’s safe harbor encompasses only affirmative action plans that are “adopt[ed] and carried] out ... to eliminate present effects of past discriminatory practices or assure equal opportunity . . . .” MCL 37.2210. Therefore, where the commission fails to apply these standards in its examination of an affirmative action plan, the plan has not been properly approved by the commission.[1]
Because plaintiff has not preserved the issue whether the commission complied with the requirements of § 210 when it approved defendant’s affirmative action plan, the majority does not address this *816 issue. This silence, however, should not mislead some to believe that the commission possesses plenary authority to shield from liability any affirmative action plan. Rather, the commission is confined, not only by the requirements of the constitution, but also by the requirements of § 210 itself. To reiterate, under § 210, the commission only has the authority to approve, and thus to shield from liability under the Civil Rights Act, affirmative action plans that are “adoptfed] and carried] out ... to eliminate present effects of past discriminatory practices or assure equal opportunity . . . .”[2] Id.

 In observing that “a complainant could challenge the commission’s approval of an affirmative action plan, arguing that the plan fails to conform to criteria required by the cra for approval,” post at 840-841, the dissent apparently does not disagree with this proposition. However, the dissent asserts that my “sweeping interpretation, if accurate, would render the safe-harbor provision unworkable.” Post at 841, n 30. I have difficulty understanding why my view is a “sweeping interpretation,” when I am merely quoting verbatim the statutory language, i.e., “[a] person subject to this article may adopt and carry out a plan to eliminate present effects of past discriminatory practices or assure equal opportunity . . . .” MCL 37.2210. I agree with the dissent that the “safe harbor does not protect only those plans that succeed in eliminating present effects of past discrimination.’’ Id. (emphasis added). Rather, the safe harbor protects all properly approved plans that are “adoptjed] and carried] out ... to eliminate present effects of past discriminatory practices or assure equal opportunity . . .” — but only such, plans.

 The significance of this unremarkable observation — that the language of § 210 means what it says — arises largely in the event that the constitutionality of § 210 is ultimately sustained, in particular, if predicated upon the premise that what would otherwise be unconstitutional, i.e., a hiring plan allowing the govemment-as-employer to treat persons differently on account of religion, race, color, or national origin, is made constitutional by virtue of the standards set forth for affording an affirmative action plan a “safe harbor.” See City of Boerne v Flores, 521 US 507, 519; 117 S Ct 2157; 138 L Ed 2d 624 (1997X“Congress does not enforce a constitutional right by changing what the right is. It has been given the power ‘to enforce,’ not the power to determine what constitutes a constitutional violation. Were it not so, what Congress would be enforcing would no longer be, in any meaningful sense, the ‘provisions of the Fourteenth Amendment.’ ”); Marbury v Madison, 5 US (1 Cranch) 137, 177; 2 L Ed 60 (1803).