# IN THE COURT OF APPEALS OF IOWA

No. 14-0764
Filed March 25, 2015

**KYLE CONKLIN and A.C., a minor, by**
**KYLE CONKLIN, her father, next**
**friend and legal guardian,**
Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
Respondent-Appellee.

_____

Appeal from the Iowa District Court for Cherokee County, Carl J. Petersen, Judge.

Kyle Conklin and A.C. appeal the district court's grant of the State's motion to dismiss. **AFFIRMED.**

Jack B. Bjornstad of Bjornstad Law Office, Spirit Lake, for appellant.

Thomas J. Miller, Attorney General, Jeffrey S. Thompson, Solicitor General of Iowa, and William R. Pearson, Assistant Attorney General, for appellee State.

Heard by Vogel, P.J., McDonald, J., and Zimmer, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2015).

**VOGEL, P.J.**

Kyle Conklin along with his minor daughter A.C., (hereafter "Conklin"), appeal the district court's grant of the State's motion to dismiss. Conklin asserts there is a private cause of action for a violation of the Iowa Constitution, and the court erred in concluding the Iowa Tort Claims Act (ICTA) did not provide an avenue for relief. He further claims the court improperly found the State, as well as the individual actors, were entitled to immunity.

We decline to judicially imply a remedy for a violation of the Iowa Constitution. Therefore, Conklin cannot bring a private cause of action against the State for alleged violations of the Iowa Constitution. Furthermore, the ICTA does not provide an avenue for relief with regard to his claims. For these reasons we need not address the issue of the State's immunity, and we affirm the district court's order granting the State's motion to dismiss.

**I. Factual and Procedural Background**

This matter is an appeal from the district court's dismissal of Conklin's civil suit against the State of Iowa, which alleged various constitutional violations. The suit stems from a warrant for Conklin's arrest, issued during the child-in-need-of-assistance (CINA) proceedings and the termination of Conklin's parental rights to his four sons.

The children—four boys[1]—first came to the attention of the Iowa Department of Human services on June 28, 2010. The State petitioned for an ex parte removal order alleging the children should be removed from the mother's

---

[1] A.C., Conklin's daughter, lives with Conklin in Nebraska. She was never removed from his care and was not the subject of a termination proceeding. As of the date of the petition at issue in the present suit, A.C. remained in his custody.

care; however, the children were located at the father's residence in Nebraska. They were removed and placed in foster care in Iowa. They were adjudicated children in need of assistance pursuant to an Iowa juvenile court order filed August 4, 2010.

On October 18, 2010, the State issued an arrest warrant for Conklin, alleging a misdemeanor tampering-with-witness charge relating to a witness in the children's CINA proceedings. The warrant provided "No Bail until seen by Magistrate." Conklin made several attempts to resolve the bail issue but did not do so until January 9, 2012, one day prior to the termination hearing. On that date, the children's mother picked Conklin up from a bus station in Sioux City, Iowa, and drove him to the Cherokee County jail where he turned himself in. He was released the same day, and the outstanding warrant was resolved. Because of his efforts to resist the warrant and not enter Iowa, Conklin had no physical contact with the children between October 18, 2010, and January 2012.

In an order filed March 27, 2012, the juvenile court terminated Conklin's parental rights to his four sons; with respect to Conklin, it ordered termination pursuant to Iowa Code section 232.116(1)(e) (2011), given he had not maintained consistent and meaningful contact with the children. The termination order was affirmed by our court, which agreed with the juvenile court that Conklin had not shown reasons that would excuse his absence from the children's lives. *See In re G.C.*, No. 12-0709, 2012 WL 3590182, at *2 (Iowa Ct. App. Aug 22,

2012).[2]

Conklin filed the petition now at issue on December 17, 2013, alleging that, due to the State's actions in issuing a no-bail warrant during the pendency of the CINA proceeding, Conklin's parental rights were interfered with, then subsequently terminated. The petition stated:

> This is an action brought under the Constitution of the State of Iowa and the United States Constitution challenging the Defendant's violation of the Plaintiffs' constitutional rights.
> . . . .
> Jurisdiction of the Court is invoked pursuant to Iowa Code Section 669.4.

The caption named the State of Iowa as the defendant, and alleged the following claims: (1) violation of the right to bail and access to surety, as guaranteed by article I, section 12 of the Iowa Constitution; (2) violation of the right to be free from excessive bail, as guaranteed by article I, section 17 of the Iowa Constitution and the Eighth Amendment to the United States Constitution;

---

[2] The mother's parental rights were also terminated, and we affirmed on her appeal. With respect to Conklin, our court noted:

> The father did not participate in any reunification services despite the State providing him the opportunity and encouraging him to do so. After sixteen months of no personal contact, the first time the father saw his children face-to-face was after the first day of termination proceedings. The father provided no financial support to the children other than providing the mother with a couple of gift cards. The father did, however, have regular, brief phone contact with the children . . . .
> The father contends the State denied him a fair opportunity to resume care of his children because he had a "no-bond" warrant for his arrest in Iowa . . . . On January 9, 2012, one day prior to the termination proceeding, the father turned himself in and was released the same day.
> The juvenile court found the father offered no satisfactory reason as to why he did not resolve the no-bond warrant issue earlier. We agree. The no-bond warrant did not relieve the father of his parental responsibilities nor is the challenge to the constitutionality of such warrants properly before this court. The father's acts led to the October 2010 arrest warrant. The father failed to resolve the issue from October 2010 to January 2012.

In re G.C., 2012 WL 3590182, at *2 (internal citation omitted).

(3) violation of the right of the natural parent to the care, custody, and management of children and the right to liberty—with respect to Conklin Conklin—and the right to familial association—as to A.C.—as guaranteed by article I, section 1 of the Iowa Constitution and the Fourteenth and Ninth Amendments to the United States Constitution; and (4) violation of the right to be free from unreasonable seizure, with respect to Conklin, as guaranteed by article I, section 8 of the Iowa Constitution and the Fourth Amendment to the United States Constitution.

On January 21, 2014, the State filed a motion to dismiss, arguing there was no private cause of action for a violation of either the Federal or the Iowa Constitution. It claimed the Iowa Constitution itself prohibited a private cause of action against the State in the absence of enabling legislation, and furthermore, no legislation had been enacted that would allow such a suit. Thus, the proper avenue to plead Conklin's claims was to assert a cause of action under 42 United States Code section 1983 (2013). It also argued that, in the alternative, the State is entitled to either absolute judicial or absolute quasi-judicial immunity. On appeal, the State further asserts that the ITCA does not operate to waive the immunity.

A hearing was held on March 3, 2014. On April 15, 2014, the district court issued an order granting the State's motion to dismiss. Specifically, it agreed with the State that the ITCA did not waive the State's immunity. Because Conklin's claims were based on the issuance of the arrest warrant and the subsequent prevention of Conklin's ability to see his children, the court concluded no individual could issue or enforce a warrant and therefore no private

individual could be sued for a violation of the constitution, unless acting under color of law. Thus, under the requirements of the ITCA, the State could not be sued civilly. The court also concluded the State (and its employees) enjoyed absolute and quasi-judicial immunity for its actions in issuing and enforcing the arrest warrant. Based on these findings, the court concluded no claims could be brought against the State for an asserted violation of the Iowa Constitution.[3] Conklin appeals.

## II. Standard of Review

We review the district court's ruling on a motion to dismiss for correction of errors at law. *Mueller v. Wellmark, Inc.*, 818 N.W.2d 244, 253 (Iowa 2012). To the extent we are reviewing constitutional claims, our review is de novo. *State v. Kurth*, 813 N.W.2d 270, 272 (Iowa 2012).

## III. Private Cause of Action for Violations of the Iowa Constitution

Whether a private cause of action exists for the State's alleged violation of the Iowa Constitution is a matter of first impression for our court.[4] We further note this would need to be a judicially implied remedy, given both parties agree there has been no legislation creating a private cause of action.

---

[3] Though Conklin asserted his rights under the United States Constitution had been previously violated, his claims were pled under the ITCA, and he did not plead any Federally-based causes of action. Moreover, the State's motion to dismiss and the district court's ruling did not address Conklin's Federal Claims nor has Conklin advanced any arguments under the Federal Constitution. Consequently, we will not address Conklin's Federal Claims.

[4] Conklin relies on a decision from the Northern District of Iowa that predicted the Iowa Supreme Court would conclude that a private cause of action for a violation of the Iowa Constitution existed. *See McCabe v. Macaulay*, No. 05-CV-73, 2007 WL 2903191, at *2 (N.D. Iowa Oct. 1, 2007). However, a federal district court decision is not binding authority on our court. *See generally State v. Short*, 851 N.W.2d 474, 481 (Iowa 2012).

When there is no express cause of action set forth in a statute, to judicially imply such a cause of action, the court must inquire whether: (1) the plaintiff is a member of the class for whose benefit the statute was enacted; (2) legislative intent, either explicit or implicit, exists to create or deny the remedy; (3) the cause of action is consistent with the underlying purpose of the statute; and (4) the private cause of action would intrude into an area over which the federal or state government holds exclusive jurisdiction. *Meinders v. Duncan Cmty. Sch. Dist.*, 645 N.W.2d 632, 635 (Iowa 2002). Though the Iowa Constitution is not a statute, we nonetheless find these factors persuasive when analyzing whether a private cause of action exists for a violation of our state constitution.

Article XII, section 1 of the Iowa Constitution states in part: "The general assembly shall pass all laws necessary to carry this constitution into effect." Implicit in this phrasing is that the constitution itself does not create a cause of action for a violation of its terms; rather, the legislature must pass laws in order for a remedy to exist. Consequently, the intent of our constitution is to rely on a legislative remedy rather than an implied judicial remedy for the existence of a private cause of action. Notably, no legislation has been passed providing for such a remedy. Therefore, the text of the constitution itself counsels that we should decline to judicially imply the existence of a private cause of action. *See Meinders*, 645 N.W.2d at 635–36 (holding no private cause of action existed for a violation of Iowa Code chapter 279 (2001) due to the fact the statute itself did not create a remedy, and therefore, the legislature did not intend to create a private cause of action for a violation of its mandates).

Several of our sister states, whose constitutions have similar language to that found in article XII, have also declined to imply a private cause of action for a violation of their state constitutions. *See Lewis v. State*, 629 N.W.2d 868, 870 (Mich. 2001) (holding the court could not create a judicial remedy for the violation of the Michigan Constitution because to do so would violate the separation-of-powers doctrine, given its constitution granted the legislature the power to enact laws putting the constitutional provisions into effect); *Bandoni v. State*, 715 A.2d 580, 595 (R.I. 1998) (relying on a provision in the Rhode Island Constitution very similar to article XII, and concluding, "we are of the opinion that the creation of a remedy in the circumstances presented by this case should be left to the body charged by our Constitution with this responsibility"); *Shields v. Gerhart*, 658 A.2d 924, 930–33 (Vt. 1995) (holding the plaintiff could not bring a private cause of action seeking money damages for a violation of the Vermont Constitution).[5]

---

[5] Conklin cites several cases from other states that have allowed a private cause of action for a violation of various provisions of their state constitutions. *See Binette v. Sabo*, 710 A.2d 688, 690–700 (Conn. 1998) (holding a private cause of action existed for the state's violation of the constitution's search-and-seizure provision); *Peper v. Princeton Univ. Bd. of Trs.*, 389 A.2d 465, 477 (N.J. 1978) (adopting the holding of *Bivens*, thereby judicially implying a cause of action for a violation of the state constitution's equal protection clause); *Bott v. DeLand*, 922 P.2d 732, 737–39 (Utah 1994) (holding a private cause of action could be brought for a violation of the unnecessary-rigor clause in the Utah Constitution). However, we decline to consider these cases persuasive authority, particularly given the fact that, in more recent years, several of these states have refrained from expanding these holdings when considering whether to recognize a cause of action for a violation of various other state constitutional provisions. *See generally Martin v. Brady*, 780 A.2d 961, 966 (Conn. App. Ct. 2001) (holding the officers' conduct was not sufficiently egregious to warrant the availability of a private cause of action for a violation of the Connecticut Constitution, thereby narrowing the availability of the remedy); *Spackman v. Bd. of Educ. of Box Elder Cnty. Sch. Dist.*, 16 P.3d 533, 537 (Utah 2000) (abrogating *Bott*, 922 P.2d at 737–39, and holding no private cause of action could be brought for a violation of the state constitution without the existence of a self-executing clause, but even then, a "self-executing constitutional provision does not necessarily give rise to a damages suit"). Nor do we agree, as counsel asserted in oral argument, that the Iowa Supreme Court has already judicially implied a remedy for a violation of the Iowa Constitution as against

We find the reasoning set forth in these opinions persuasive, particularly the separation-of-powers analysis. Specifically, we agree with the conclusion that, given the express language in article XII, which grants the legislature the power to enact laws to carry the constitutional provisions into effect, it would create a significant separation-of-powers issue were we to judicially imply a remedy in the absence of a statute. *See Klouda v. Sixth Judicial Dist. Dep't of Corr. Serv.*, 642 N.W.2d 255, 260 (Iowa 2002) (noting: "The separation-of-powers doctrine is violated 'if one branch of government purports to use powers that are clearly forbidden, or attempts to use powers granted by the constitution to another branch.'" (internal citation omitted)). Clearly, when the constitution explicitly states that it is within the province of the legislature to establish remedies, were we to judicially create a cause of action, it would violate the separation-of-powers doctrine—we would be exercising "powers granted by the constitution to another branch." *See id.*

Nonetheless, Conklin urges us to imply a private cause of action, relying on *Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388 (1971). In *Bivens*, the Supreme Court held that a federal cause of action under the Fourth Amendment existed, with damages recoverable against the federal agents upon proof that the violation occurred. 403 U.S. at 395–96. In doing so, it noted: "The present case involves no special factors counseling hesitation [in creating a private cause of action] in the absence of affirmative

---

the State. *See Girard v. Anderson*, 257 N.W. 400, 402 (Iowa 1938) (holding there is a private cause of action available against a private individual based on the defendant's unlawful entering of the plaintiff's home and seizure of the plaintiff's property, and further noting the protection of the home is a tenet of the Iowa Constitution).

action by Congress." *Id.* at 396. However, we note that at the time of this decision, 42 United States Code section 1983 already existed, and therefore a private cause of action—when a person acting under color of state law violated an individual's federal constitutional rights—had already been established. *See* 42 U.S.C. § 1983. Thus, as the Pennsylvania court noted, the Court simply:

> [E]xpanded the remedy available under Section 1983 to address the wrong done by the federal officers. With that approach, the *Bivens* Court required the cause of action to meet the statutory requirements of Section 1983. It provided this cause of action only because there was no other adequate federal legislative or administrative remedy, and there were "no special factors counseling hesitation in the absence of affirmative action by Congress." *Bivens*, 403 U.S. at 396.

*Jones v. City of Philadelphia*, 890 A.2d 1188, 1210 (Pa. 2006).

Moreover, recent case law has indicated the Supreme Court is moving away from the holding in *Bivens*, that is, it is declining to imply remedies for constitutional violations in the absence of a statute. *See Corr. Servs. Corp. v. Malesko,* 534 U.S. 61, 66–72 (2001) (noting the extensive case law refusing to extend *Bivens*, and further stating: "In 30 years of *Bivens* jurisprudence we have extended its holding only twice"; therefore, the Court declined to authorize a civil suit against private individuals acting under color of federal law for violating the Federal Constitution); *Schweiker v. Chilicky*, 487 U.S. 412, 420–22 (1988) (holding there was no private cause of action for the Social Security Administration's violation of the plaintiff's due process rights); *Bush v. Lucas*, 462 U.S. 367, 389–90 (1983) (declining to extend *Bivens* to recognize a private cause of action for a violation of the plaintiff's First Amendment rights, absent Congressional legislation authorizing such a remedy). Therefore, recent case

law counsels against a reliance on *Bivens* to imply a private cause of action for a violation of the Iowa Constitution.

This conclusion is further supported by the fact that Conklin can properly bring his claims as a section 1983 action. When a private actor, operating under color of state law, violates the Federal Constitution, the plaintiff may bring a civil suit against them. 42 U.S.C. § 1983; *see also Dickerson v. Mertz*, 547 N.W.2d 208, 214 (Iowa 1996). Conklin pled all but one of his claims alleging violations of the United States Constitution as well as the Iowa Constitution, a pleading that could viably establish a section 1983 action. *See generally Dickerson*, 547 N.W.2d at 214 (noting the elements the plaintiff must establish to succeed on a 1983 cause of action). Thus, there is already an avenue of relief under which Conklin may bring his claims, which is another "special factor counseling hesitation" when considering whether to imply a cause of action for a violation of the Iowa Constitution. *See Bivens*, 403 U.S. at 396.

In summation, the Iowa Constitution itself counsels against judicially implying a remedy for a violation of its terms. *See* Iowa Const. art. XII, § 1. Several of our sister states with similar constitutional provisions have declined to create a cause of action for a violation of their state constitutions, particularly given the separation-of-powers issue that would arise were the courts to do so. Furthermore, *Bivens* and its progeny, as well as the availability of a section 1983 cause of action to Conklin, are also special factors counseling hesitation for creating such a remedy. For these reasons, we decline to judicially imply a private cause of action for a violation of the Iowa Constitution.

**IV. Whether the Claims can be Brought Under the ITCA**

Conklin further asserts the ITCA provides an avenue of relief for his claims. Specifically, he argues the claims are properly brought under Iowa Code chapter 669 (2013), which operates to waive the State's immunity as well as create a remedy.

The ITCA allows a plaintiff to bring a claim against the State praying for money damages when his loss is "caused by the negligent or wrongful act or omission of any employee of the state while acting within the scope of the employee's office or employment, under circumstances where the state, if a private person, would be liable." Iowa Code § 669.2(3)(a); *see also Magers-Fionof v. State*, 555 N.W.2d 672, 674 (Iowa 1996). However: "The act does not itself create a cause of action. It merely recognizes and provides a remedy for a cause of action already existing which would have otherwise been without remedy because of the common law immunity." *Sanford v. Manternach*, 601 N.W.2d 360, 370 (Iowa 1999).

As concluded above, there is no private cause of action for a violation of the Iowa Constitution. Thus, because the ITCA only provides a remedy for an already-established cause of action, the ITCA is inapplicable to the constitutional claims brought by Conklin. *See id.* at 370–71 (examining whether there was a recognized tort for the deprivation of good time conduct, but because there was no statutory remedy for a violation of Iowa Code chapter 903 (1999), the court held the plaintiff's claims could not be brought under the ITCA). Therefore, the ITCA does not provide an avenue of relief for Conklin's claims.

Because we conclude there is no private cause of action for a violation of the Iowa Constitution, and the ITCA does not provide an alternate avenue of relief, we need not address whether the State enjoys immunity from Conklin's civil suit. For these reasons, we affirm the district court's grant of the State's motion to dismiss.

**AFFIRMED.**