Per Curiam.
In this case, Plaintiff David Sharp brought a reverse discrimination claim against the city of Lansing for its use of an affirmative action plan in hiring decisions. Plaintiff alleged violations of the Michigan Civil Rights Act (cra)[1] and the Equal Protection Clause of the Michigan Constitution[2]. The trial court granted summary disposition for the city, finding plaintiffs claims barred by the “safe harbor” provision of MCL 37.2210. The Court of Appeals upheld the dismissal.[3] 238 Mich App 515; 606 NW2d 424 (1999).
It is beyond question that the safe harbor of the cra shields a public employer with a Civil Rights Commission-approved affirmative action plan from liability under the cra for acts undertaken pursuant to that plan. Principally at issue is whether the safe harbor provision also shields such an employer from constitutional equal protection challenges. We hold that it does not. We affirm in part the decision of the Court *795 of Appeals, reverse it in part, and remand the case to the trial court.
i
BACKGROUND
Plaintiff wanted to be a firefighter with the city of Lansing Fire Department. He believed himself qualified, since he was a certified firefighter and the fire chief in Onondaga Township. For six consecutive years, 1990-1995, he applied for a firefighter position with the city. Each time he was denied employment. He believes that the city wrongfully refused to hire him because he is a Caucasian male.
The reason for the repeated rejection, according to Sharp, was the city’s affirmative action plan.[4] The plan was formally approved by the Civil Rights Commission in April 1987, pursuant to § 210 of the cra. That provision generally encourages employers to implement voluntary affirmative action plans and sets forth a procedure for doing so.
Plaintiff sued the city, seeking damages, an injunction barring further use of the affirmative action plan, and a position with the city fire department. He argued that § 210 did not bar his claim and that the city’s plan operated unconstitutionally with respect to him. Defendant disagreed and moved for summary disposition on the ground that the safe harbor of § 210 precluded all liability. The trial court granted *796 the motion before the close of discovery, relying on MCR 2.116(C)(8), (10). It concluded that the cra provided the exclusive remedy for discrimination claims in the state and, therefore, such a claim was barred in this instance.
The Court of Appeals affirmed the trial court’s grant of summary disposition, relying on Cole v General Motors Corp.[5] The panel believed that it was bound by the precedent of Cole; but disagreed with the reasoning employed there. It stated:
Because plaintiff does not challenge the constitutionality of the Civil Rights Act itself, but only the validity of defendant’s affirmative action plan and the actions of defendant employer, we believe that the ruling in Cole effectively resolves plaintiff’s claim in this case. Were it not for the Cole decision, however, we would reach a different result. [238 Mich App 519.]
If working from “a clean slate,” the Court of Appeals majority[6] added, it would not interpret § 210 as providing defendant employer with a shield from liability. Instead, it would have subjected the plan itself to constitutional review and would have held that § 210 does not “automatically” confer immunity from statutory liability under the CRA. We granted plaintiff’s application for leave to appeal.
Plaintiff argues that the city’s affirmative action plan should not have been approved. He asserts that the plan delegates too much authority to the city by *797 allowing the city to make changes to it without commission approval. He contends, also, that the trial court erred by granting summary disposition before discovery ended. A genuine issue of fact exists, he argues, about whether the plan ever received approval from the commission. Finally, he challenges the lower court’s decision that § 210 completely immunizes defendant’s actions taken in accordance with its approved affirmative action plan.
II
ANALYSIS
This case involves the interplay of the Equal Protection Clause of our constitution and the statutory framework of the CRA. Art 1, § 2 guarantees Michigan citizens the right to be free from racial discrimination in employment by state actors. That clause provides:
No person shall be denied the equal protection of the laws; nor shall any person be denied the enjoyment of his civil or political rights or be discriminated against in the exercise thereof because of religion, race, color or national origin. The legislature shall implement this section by appropriate legislation.
The CRA extended these protections to employment in the private sector. Thus, it prohibits racial employment discrimination by private and government employers[7], while creating a damages remedy[8] for those victimized by unlawful employment acts.
*798 Section 210 of the cra invites employers to implement their own affirmative action policies. Under this section, an employer’s actions that would otherwise violate the CRA are permissible, provided they are taken pursuant to an affirmative action plan properly approved by the commission. Section 210 provides:
A person subject to this article may adopt and carry out a plan to eliminate present effects of past discriminatory practices or assure equal opportunity with respect to religion, race, color, national origin, or sex if the plan is filed with the commission under rules of the commission and the commission approves the plan.
We presume that the Legislature intended the unequivocal meaning expressed in § 210. See Nation v W D E Electric Co, 454 Mich 489, 494; 563 NW2d 233 (1997). It provides a safe harbor for public and private employers who act in accordance with properly approved affirmative action plans. However, the safe harbor does not shield against all claims. It merely protects employers from liability under the CRA for doing precisely what the statute itself invites them to do.
In support of its motion for summary disposition, defendant presented affidavits showing that its hiring decisions had been made pursuant to an affirmative action plan approved by the Civil Rights Commission in 1987. Plaintiff does not dispute that the commis *799 sion approved defendant’s 1987 plan. Rather, he argues that a genuine issue of material fact exists whether defendant actually used the approved plan in making hiring decisions between 1990 and 1995. Plaintiff contends that defendant followed different and unapproved plans when making the hiring decisions at issue. Moreover, he asserts, the commission “exceeded its authority” by giving to defendant the discretion periodically to adjust its hiring goals without commission approval.
The essence of plaintiff’s position is that defendant’s periodic revision of its hiring goals after 1987 resulted in the establishment of new affirmative action plans. He argues that these plans should have been submitted for commission approval. However, plaintiff has offered no factual support for his assertions. Accordingly, he has failed to create a genuine issue of material fact whether defendant relied on a series of separate, unapproved plans in making the hiring decisions at issue. Moreover, he has not established that further discovery would uncover support for that assertion. Therefore, we reject his argument that summary disposition entered prematurely with respect to the cra claim.
In a related vein, plaintiff suggests that the commission erred in failing to make findings of fact and conclusions of law when it approved defendant’s affirmative action plan. Plaintiff did preserve the issue whether the commission was required under the Administrative Procedures Act, MCL 24.285, to make findings of fact and conclusions of law. However, for the reasons set forth in the Court of Appeals decision, MCL 24.285 is not applicable to this case. 238 Mich App 521. Accordingly, plaintiff has not preserved the *800 issue whether the commission was required under § 210 to make findings of fact and conclusions of law. Thus, we conclude that the safe-harbor provision bars plaintiffs statutory claims against the city.
But our inquiry does not end there. A state actor is involved. Consequently, the protections provided directly by the state Equal Protection Clause come into play. When an aggrieved plaintiff alleges that a public employer denied his equal protection rights in violation of art 1, § 2, the employer’s acts are subject to review under that constitutional provision. Injunc-tive and declaratory relief are available to restrain any acts found to violate the state Equal Protection Clause.[9] Hence, the mere existence of an approved affirmative action plan does not insulate a state employer, or its plan, from all judicial scrutiny.
In this case, plaintiff sought constitutional relief, alleging that defendant’s affirmative action plan violates art 1, § 2.[10] Defendant asserts that plaintiff did not vigorously pursue his constitutional theory either at trial or in the Court of Appeals. It argues that such a lack of pursuit constitutes an abandonment of the claim, regardless of how it was pleaded.[11] We disagree that plaintiff failed to pursue his constitutional claim sufficiently.
*801 Although plaintiffs presentation of this issue was somewhat scattered, the record reveals that plaintiff did raise the issue at various stages of the litigation. First, he challenged the constitutionality of defendant’s plan in his own motion for partial summary disposition, which was denied. Next, he raised the issue in his motion for reconsideration of the trial court’s decision granting summary disposition to defendant. Finally, he raised it in the Court of Appeals. Indeed, the Court of Appeals itself acknowledged the issue. The problem with the analyses of both the trial court and the Court of Appeals is that the lower courts apparently assumed that § 210 alone resolved plaintiff’s constitutional challenge.
Hence, we find that plaintiff pleaded and pursued his constitutional theory sufficiently to provide notice to defendant of the claims against which it would have to defend. Having preserved the issue, plaintiff is entitled to be heard on his claim for injunctive relief.
The dissent’s conclusion that plaintiff’s constitutional challenge is barred fails to appreciate that the safe harbor provided by § 210 necessarily extends only to statutory claims under the cra. There is simply no requirement that a plaintiff proceed through a statutory vehicle in order to seek declaratory or injunctive relief against an alleged violation of the state Equal Protection Clause. While the second sentence of art 1, § 2 commits its affirmative, “implementation” to the Legislature,[12] the first sentence of this constitutional provision commands that “[n]o person *802 shall be denied the equal protection of the laws; nor shall any person be denied the enjoyment of his civil or political rights or be discriminated against in the exercise thereof because of religion, race, color, or national origin.” The duty imposed on the Legislature by the second sentence of art 1, § 2 to implement art 1, § 2 is not a power to ultimately define the substantive meaning of the first sentence. Accordingly, while the state judiciary cannot positively implement art 1, § 2, the judiciary has the legitimate authority, in the exercise of the well-established duty of judicial review, to evaluate governmental action to determine if it is consistent with the equal protection guarantees of the first sentence of art 1, § 2 and to invalidate such action if it is not. In short, art 1, § 2 commands the Legislature to adopt measures to practically implement its equal protection guarantees. This “implementation” language does not mean that state and local governmental entities are free to violate the substantive equal protection guarantees of art 1, § 2 merely because the Legislature has failed to address a particular type of violation.
Our dissenting colleague relies heavily on an analogy to federal law, particularly United States Supreme Court decisions related to employment discrimination claims against the federal government. The dissent portrays this case law as indicating that title vn of the federal Civil Rights Act (“title vn”) provides the exclusive remedy for employment discrimination by the federal government. From this, the dissent argues in essence that state statutes should be held to provide the exclusive remedy for employment discrimination claims against state or local government actors under state law. As the dissent forthrightly acknowledges, *803 this federal case law can only be persuasive authority, not binding precedent, in resolving the present case, which involves only questions of state law. We consider the dissent’s attempted analogy to federal law to be unpersuasive.
The dissent analogizes the present case to Brown v General Services Administration, 425 US 820; 96 S Ct 1961; 48 L Ed 2d 402 (1976). In particular, our dissenting colleague relies on language in Brown “that § 717 of the Civil Rights Act of 1964, as amended, provides the exclusive judicial remedy for claims of discrimination in federal employment.” Brown, supra at 835. However, as the dissent acknowledges, the claims in Brown were all statutory. Post at 823. Thus, at most, Brown can only stand for the proposition that the Civil Rights Act of 1964 provides the exclusive statutory remedy for discrimination in employment by the federal government because Brown did not involve a constitutional issue. Moreover, Brown stated that even before the extension of title vn in 1972 to cover federal employees “an action seeking to enjoin unconstitutional agency conduct would lie . . . .” Id. at 826. Accordingly, consistent with our holding in the present case, Brown accepted as an established principle that a party could seek injunctive relief against unconstitutional governmental action.
The dissent also contends that, in Great American Fed S & L Ass’n v Novotny, 442 US 366; 99 S Ct 2345; 60 L Ed 2d 957 (1979), the United States Supreme Court “made clear that Brown’s reasoning extended to encompass the notion that title vn preempts constitutionally based claims as well.” Post at 823. We disagree because Novotny, a case with only private par *804 ties as litigants, did not involve any constitutional claim. In Novotny, the male plaintiff alleged that he suffered unlawful employment discrimination because he opposed his former employer’s practice of discriminating against female employees on the basis of sex in violation of the “anti-retaliation” provision of title VII prohibiting an employer from discriminating against an employee for opposing a violation of title vn. In pertinent part, the plaintiff in Novotny attempted to bring suit against that employer and its directors under 42 USC 1985(3). Essentially, 42 USC 1985(3) was the modem codification of a Reconstruction Era civil rights statute that generally provided a private cause of action against certain conspiracies to violate federally protected rights. The Novotny Court noted its concern that, if a violation of title vn could be asserted through this other statute, many of the provisions of title vn would be avoided. Accordingly, the Novotny Court declined to allow such a cause of action.
We consider the dissent’s effort to analogize the present case to Novotny unpersuasive for two critical reasons. First, inasmuch as Novotny did not involve a governmental defendant, it did not involve any constitutional claim of violation of the equal protection guarantees of the United States Constitution. Second, the plaintiff in Novotny was attempting to redress conduct that was prohibited by title vn through another, more generalized, federal statute, and his claim that title vn was violated was an essential aspect of his claim. In contrast, while the present plaintiff cannot proceed under the cra because of the safe harbor provided by § 210, that does not mean that he cannot claim that the conduct at issue by the *805 city of Lansing is violative of the state Equal Protection Clause. Thus, Novotny is simply inapposite to whether injunctive relief is available against governmental action that is unconstitutional if it is claimed that action violates the constitutional equal protection guarantees.
The dissent further cites Davis v Passman, 442 US 228; 99 S Ct 2264; 60 L Ed 2d 846 (1979), in support of its discussion of plaintiff’s constitutional claim. Post at 821. However, we believe that Davis actually supports our analysis. In Davis, a female employee of a member of congress was informed by him in a letter that she was removed from her position because he concluded that it was “essential” that the position be held by a man. At that time, congressional employees like the petitioner in Davis were not protected from employment discrimination under title vn of the Civil Rights Act. See id. at 247 (“[w]hen § 717 was added to title vn to protect federal employees from discrimination, it failed to extend this protection to congressional employees such as petitioner who are not in the competitive service”). The United States Supreme Court held that the plaintiff in Passman could bring a cause of action directly under the Due Process Clause of the Fifth Amendment on the basis of sex discrimination in violation of its equal protection component. Id. at 242-244.
Properly understood then, Davis supports our treatment of the constitutional claim in the present case. The plaintiff in Davis was unable to seek relief under the generally applicable federal statute against employment discrimination because, as a congressional employee, she was not covered by that statute. Similarly, because of § 210, the state CRA provides no *806 recourse for a person who alleges that conduct by a governmental employer pursuant to an affirmative action plan properly approved under § 210 constitutes unconstitutional employment discrimination in violation of art 1, § 2. In effect, a person who may have suffered unconstitutional employment discrimination under such a plan, assuming it is adopted and approved, is not covered by the CRA. Nevertheless, as in Davis, such a person is able to directly challenge the alleged constitutional violation.[13] Indeed, the Davis Court expressly stated that “this Court has already settled that a cause of action may be implied directly under the equal protection component of the Due Process Clause of the Fifth Amendment in favor of those who seek to enforce this constitutional right.” Davis, supra at 242. In support of this principle, the Court referred to Bolling v Sharpe, 347 US 497; 74 S Ct 693; 98 L Ed 884 (1954), in which the Court held that “equitable relief” was available to plaintiffs challenging racial segregation in the District of Columbia schools as violative of the Fifth Amendment. See Davis, supra at 242-243. As the Davis Court noted, the action in Bolling was predicated directly on the Fifth Amendment. Davis, supra at 243. Thus, Bolling and Davis support a conclusion that injunctive relief is available to end a constitu *807 tional violation without the need for any type of implementing statute.[14]
The United States Supreme Court decision in Smith v Robinson, 468 US 992; 104 S Ct 3457; 82 L Ed 2d 746 (1984), also fails to support Justice Kelly’s view that plaintiff may not directly seek injunctive relief under the Michigan Constitution. Smith involved claims that a handicapped child was denied a “free appropriate public education” in violation of, in pertinent part, the federal Education of the Handicapped Act (eha), 20 USC 1400 et seq., and the federal Equal Protection Clause. Smith, supra at 994-995. The pertinent issue in Smith was whether the petitioners could recover attorney fees under 42 USC 1988, which generally allowed such a recovery in favor of plaintiffs seeking to enforce federal constitutional rights when the specifically applicable eha, as then in effect, made no provision for awarding attorney fees. The Court concluded that attorney fees could not be awarded under 42 USC 1988, because Congress “intended the eha to be the exclusive avenue through which a plaintiff may assert an equal protection claim to a publicly financed special education.” Smith, supra at 1009. Accordingly, the issue involved in Smith was actually one of statutory construction or application, not of federal constitutional law. Thus, Smith does not support a view that a statute may pre- *808 elude injunctive relief to end a constitutional violation.
Moreover, the Smith Court stated “where the eha is available to a handicapped child asserting a right to a free appropriate public education, based either on the EHA or on the Equal Protection Clause of the Fourteenth Amendment, the eha is the exclusive avenue through which the child and his parents or guardian can pursue their claim.” Smith, supra at 1013 (emphasis added). At the very most, this can only reasonably be taken to support the view that, if a statutory remedy is available for an alleged constitutional violation, a party may be required to seek to a remedy that alleged constitutional violation through the procedures provided by the statute. However, as we have discussed above, plaintiff cannot challenge the alleged unconstitutional discrimination by defendant in this case under the CRA because of the immunity provided by § 210 of the cra. Accordingly, because the cra is not available to plaintiff, Smith provides no support for a contention that plaintiff may not directly seek injunctive relief under the Michigan Constitution.
Indeed, the Smith Court expressly stated:
There is no issue here of Congress’ ability to preclude the federal courts from granting a remedy for a constitutional deprivation. Even if Congress repealed all statutory remedies for constitutional violations, the power of federal courts to grant the relief necessary to protect against constitutional deprivations or to remedy the wrong done is presumed to be available in cases within their jurisdiction. [Smith, supra at 1012, n 15.]
This language makes clear that the United States Supreme Court in Smith did not regard the legislative *809 branch as having the power through a statute to foreclose the ability of the judicial branch to order an end to constitutional violations.[15]
Our dissenting colleague also attempts to analogize the present case to a large number of lower federal court decisions, see post at 828-829, in support of her position with regard to plaintiffs constitutional claim, while forthrightly acknowledging that “[s]ome federal circuits have held that title vn does not necessarily provide the only remedy available for employment discrimination claims.” Post at 828, n 23. Given that we have already explained why we find the United States Supreme Court decisions on which the dissent relies inapposite and that federal law can at most be persuasive, not binding, authority in resolving the state law questions involved in the present case, we will not burden readers of this opinion with a further discussion of case law from the lower federal courts.
We note that the dissent indicates that it would not allow plaintiff to pursue “parallel constitutional claims to remedy wrongs cognizable under the CRA,” post at 842, which, in plain language, means that a discrimination plaintiff cannot say, as this one effectively has, “I do not claim that the statute is unconstitutional. I only claim the way the statute was used, or applied, is discriminatory and, thus, unconstitutional action has been engaged in by the state.” In challenging such conduct as nevertheless constituting a viola *810 tion of art 1, § 2 of the Michigan Constitution, plaintiff is not asserting a claim that is “parallel” to an alleged violation of the CRA, but rather is seeking to invalidate conduct that is allegedly prohibited by the Michigan Constitution even though it does not violate the act. Said plainly, the unsettling position of the dissent is that, if the state actor (i.e., the city of Lansing in this case), commits ongoing employment discrimination that violates the state Equal Protection Clause, without also violating the CRA, the courts, when petitioned by the employee, have no ability to put an end to the unconstitutional discrimination. In an era in which one of the noble contributions of the state and federal courts has been to give citizens aid against discrimination, this is a startling proposition.
Our dissenting colleague also indicates that “the language of the [CRA], case law, and the legislative record persuasively support the proposition that our Legislature intended the [act] be the sole remedy for state employment discrimination claims in Michigan.” Post at 832. While the accuracy of this assertion may well be debatable, it is also irrelevant because it is axiomatic that the Legislature cannot grant a license to state and local governmental actors to violate the Michigan Constitution. In other words, the Legislature cannot so “trump” the Michigan Constitution.
Indeed, the ultimate import of the dissent is that, at least in the present context, a party cannot challenge discriminatory acts by a state actor in connection with its application or use of a statute as constituting unconstitutional discrimination under the state Equal Protection Clause — at least one cannot do so without also attacking the validity of the underlying statute. This is profoundly misbegotten because the power of *811 judicial review does not extend only to invalidating unconstitutional statutes or other legislative enactments, but also to declaring other governmental action invalid if it violates the state or federal constitution.
That judicial review of governmental action for its constitutionality extends to governmental action in connection with applying a statute, without requiring a review of the underlying statute itself, is reflected in both modem and historic United States Supreme Court precedent. In Batson v Kentucky, 476 US 79, 89; 106 S Ct 1712; 90 L Ed 2d 69 (1986), the Court held that the federal Equal Protection Clause forbids a prosecutor from using peremptory challenges to remove potential jurors on the basis of their race. The Batson Court did not address whether the underlying provisions of the Kentucky Rules of Criminal Procedure that allow a prosecutor to use peremptory challenges, see id. at 83, n 2, were unconstitutional, or in any way suggest that they were. In fact, the Court observed that it “has found a denial of equal protection where the procedures implementing a neutral statute operated to exclude persons from the venire on racial grounds.” Id. at 88. Likewise, in the present case, the courts may review whether acts undertaken by the city of Lansing pursuant to its affirmative action plan, which was approved by the Civil Rights Commission under § 210, are violative of the state Equal Protection Clause without any need for plaintiff to challenge § 210 itself as unconstitutional.
Moreover, this is not new law. One need only refer to the venerable, and celebrated, precedent of Yick Wo v Hopkins, 118 US 356; 6 S Ct 1064; 30 L Ed 220 (1886), to understand this. Yick Wo involved two peti *812 tioners who were Chinese citizens and who were imprisoned upon convictions for violating a San Francisco ordinance that required a person to obtain the consent of the local board of supervisors to run a laundry business in a location other than a brick or stone building. Such consent was denied the petitioners and “200 others who have also petitioned, all of whom happen to be Chinese subjects, [while] 80 others, not Chinese subjects, are permitted to carry on the same business under similar conditions.” Id. at 374. In light of this obvious discrimination, the Court considered the conclusion irresistible that the distinction was due to “hostility to the race and nationality to which the petitioners belong.” Id. Accordingly, the Court held, without invalidating the San Francisco ordinance, that the discrimination was violative of the federal Equal Protection Clause and ordered the release of the petitioners. Id. Of particular note in the present case, the Court in Yick Wo stated:
Though the law itself be fair on its face, and impartial in appearance, yet, if it is applied and administered by public authority with an evil eye and an unequal hand, so as practically to make unjust and illegal discrimination between persons in similar circumstances, material to their rights, the denial of equal justice is still within the prohibition of the constitution. [Id. at 373-374.]
Consistent with this recognition, it is axiomatic, and has been for over a century, that the plaintiff here may challenge the particular “application” of § 210 by defendant in connection with defendant’s affirmative action policies without asserting (or considering) whether § 210 is constitutional.
We note that our decision in this case certainly does not deny substantial practical effect to § 210 of *813 the CRA.[16] Indeed, we have held that plaintiffs statutory claim under the Civil Rights Act (and with it the possibility of recovering money damages or other compensatory relief) is barred by § 210. Further, plaintiff is able to bring a constitutional claim under art 1, § 2 because the present defendant, as a governmental entity, is directly bound to obey the equal protection guarantees of this constitutional provision. At least generally, that would not be the case with regard to a private employer that uses an affirmative action plan properly approved by the Civil Rights Commission under § 210. See Woodland v Michigan Citizens Lobby, 423 Mich 188, 205; 378 NW2d 337 (1985) (“The Michigan Constitution’s Declaration of Rights provisions have never been interpreted as extending to purely private conduct; these provisions have consistently been interpreted as limited to protection against state action”); Harvey v Aetna Life Ins Co, 72 Mich App 285, 287; 252 NW2d 471 (1976) (holding that the Equal Protection Clause applies “to actions of the state and not to private conduct”). Obviously, nothing in this opinion would prevent such a private employer from relying on § 210 as a bar to an employment discrimination claim under the CRA.
Ultimately, the dissent would create a special rule for claims of employment discrimination in violation of art 1, § 2 (or at least for such claims in the affirmative action context) that would preclude a plaintiff from directly seeking injunctive or declaratory relief against governmental action as being violative of this constitutional provision. Rather, such a plaintiff *814 would, if the dissent’s view were to prevail, either have to first establish a statutory violation or argue that a state statute is unconstitutional in order to directly challenge the alleged constitutional violation. We see no appropriate basis for imposing such a heightened duty in this context.
m
CONCLUSION
We conclude that § 210 bars statutory liability under the cra for employment discrimination where an employer acts in accordance with an affirmative action plan properly approved by the commission. The decisions of the trial court and the Court of Appeals dismissing plaintiff’s CRA claims are affirmed.
The existence of the safe harbor does not abrogate rights guaranteed under the Equal Protection Clause of the Michigan Constitution. We hold that the trial court erred by dismissing plaintiff’s constitutional claim for injunctive relief. Moreover, plaintiff has preserved this claim for appellate review. Therefore, the Court of Appeals decision on the constitutional claim is reversed and the case is remanded to the trial court for consideration of plaintiff’s prayer for injunctive relief under art 1, § 2.
Corrigan, C.J., and Cavanagh, Weaver, Taylor, and Young, JJ., concurred.

 MCL 37.2101 et seq.

 Const 1963, art 1, § 2.

 It reversed in part, allowing plaintiff to amend bis complaint to claim discrimination based on residency. This aspect of the ruling is not in dispute.

 The details of the plan itself are not central to the questions presented in this case. The stated goal of the plan was to increase the percentage of minorities and women in the fire department, which was composed predominantly of white males. In the interest of achieving its goal, the city made race and gender factors in hiring decisions.

 236 Mich App 452; 600 NW2d 421 (1999). Cole provided that an employer is insulated from liability under the CRA whenever it is insulated under title vn, its federal counterpart.

 The per curiam opinion was signed by Court of Appeals Judges Michael J. Talbot and Jane E. Markey. Judge E. Thomas Fitzgerald concurred in the result only.

 Section 202 provides in pertinent part:
(1) An employer shall not do any of the following:
(a) Fail or refuse to hire or recruit, discharge, or otherwise discriminate against an individual with respect to employment, com *798 pensation, or a term, condition, or privilege of employment, because of religion, race, color, national origin, age, sex, height, weight, or marital status. [MCL 37.2202.]

 Section 801(1) provides: “A person alleging a violation of this act may bring a civil action for appropriate injunctive relief or damages, or both.” [MCL 37.2801.]

 However, money damages are not available to an aggrieved plaintiff under these circumstances. See Lewis v Michigan, 464 Mich 781; 629 NW2d 868 (2001).

 In his first amended complaint, plaintiff prayed that the Ingham Circuit Court enter an order “enjoining Defendant city of Lansing from discriminating in employment on the basis of race, sex or national origin . . . .”

 Defendant characterizes plaintiff’s claim as an effort to “vindicate equal protection rights through the vehicle of [the cra].” Thus, according to defendant, there is no stand-alone claim for constitutional relief.

 For this reason, we hold today in Lewis, supra, that we do not have authority to grant money damages or other compensatory relief for past violations of art 1, § 2.

 Of course, the type of relief that is directly available for a violation of art 1, § 2 is different from the action for money damages against the federal government available under Davis. As we have discussed above, this Court’s holding today in Lewis, supra, makes clear that there is no cause of action for money damages arising directly under art 1, § 2. Rather, a plaintiff may seek injunctive or declaratory relief against the alleged constitutional violation.

 The dissent misapprehends our consideration of Bolling in stating that our use of that case “to predict the effects of a legislative act in 1972 evidences a remarkable twist of the laws of time and space.” Post at 835, n 25. We do not in any way rely on Bolling as indicating the intent of Congress in making any amendments to title vn in 1972. Rather, we rely on Bolling as indicating that a court may directly grant injunctive relief against a constitutional violation without regard to the content of any statute.

 Consistent with our holding today in Lewis, supra, we reiterate that judicial authority under the state Equal Protection Clause is limited to providing injunctive or declaratory relief to nullify unconstitutional legislation or otherwise stop a recurring violation of the state Equal Protection Clause. As discussed in Lewis, because of the language of the state Equal Protection Clause, any provision for compensatory relief or similar measures to positively implement the clause requires legislative action.

 We note that the present case does not involve a challenge to the constitutionality of § 210.