**Michigan Supreme Court**
**Lansing, Michigan 48909**

# Opinion

Chief Justice
Maura D. Corrigan

Justices
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Clifford W. Taylor
Robert P. Young, Jr.
Stephen J. Markman

**FILED JUNE 4, 2002**

LESLIE G. CRAWFORD,

    Plaintiff-Appellant,

v

No. 114930

DEPARTMENT OF CIVIL SERVICE,
MEMBERS OF THE CIVIL SERVICE
COMMISSION, DEPARTMENT OF
CORRECTIONS, and DIRECTOR OF
THE DEPARTMENT OF CORRECTIONS,

    Defendants-Appellees.
_____

PER CURIAM

The plaintiff claims that he was improperly denied a promotion and that minority applicants with lower test scores were promoted. He brought this action under 42 USC 1983, Const 1963, art 11, § 5, and the Michigan Civil Rights Act. The circuit court granted summary disposition for the defendants, and the Court of Appeals affirmed. We conclude: (1) the "safe harbor" provision of MCL 37.2210 does not bar the plaintiff's constitutional or federal law claims, (2) plaintiff has standing to pursue those claims, and (3)

further factual development is needed on the merits, making summary disposition inappropriate under MCR 2.116(C)(10). We remand the case to the Saginaw Circuit Court for further proceedings.

I

The plaintiff's complaint alleges that he has worked for the Department of Corrections since 1987. He began at the Thumb Correctional Facility as a Corrections Officer. In 1989, the plaintiff took a written examination for supervisors, and received a score of 99 out of 100, which gave him a "band 1" (highly qualified) rating. The other levels are band 2 (qualified) and band 3 (unqualified). The plaintiff began working as a sergeant in 1989 at the Standish Maximum Correctional Facility. He held that position for about two years, and then spent almost two more years there in a lower job classification following a voluntary demotion. The plaintiff resumed his status as a sergeant in 1993, serving as a "CSS IV sergeant" at the Gus Harrison Correctional Facility in Adrian, which required a 218-mile daily round trip from his Clio home.

In 1993, the Department of Corrections opened the Saginaw Correctional Facility near plaintiff's home, and he sought a sergeant's position there. Although he already worked at that rank in Adrian, the Department of Corrections required persons seeking lateral transfers to proceed as though they were seeking promotion to that position. The plaintiff therefore

2

took a "structured interview" in the spring of 1994. The interview process involved a group of applicants being asked identical questions. The responses were then scored and the applicants were ranked.

The Department of Corrections hired eleven persons into the sergeant positions at Saginaw. Three were African-Americans who had scored in the top eleven. Four were African-Americans who did not score in the top eleven. The plaintiff and three other white applicants who scored in the top eleven were not given positions.

Of the four African-Americans who were hired as sergeants despite not placing in the top eleven, three had received written scores that placed them in band 2 on the written exam. Under "augmented certification" procedures employed by the Department of Corrections, members of protected groups (African-Americans, Hispanics, American Indians, Asians, Pacific Islanders, women, and handicapped persons) in band 2 were treated as though they had scored in band 1, under certain circumstances. In this instance, those applicants were moved into the set of persons eligible for promotion even though nonhandicapped white males in band 2 were never moved into band 1.

In June 1996, the plaintiff filed suit against the Civil Service Commission, the Department of Civil Service, and the Department of Corrections and its director. In count I of his amended complaint, the plaintiff asked for "prospective

relief" under 42 USC 1983—declaratory and injunctive relief that would cancel the department's affirmative action plans and processes. Count II sought injunctive and declaratory relief under Const 1963, art 11, § 5 (the Civil Service provision that prohibits appointments and promotions on the basis of racial considerations). Count III was framed under the Michigan Civil Rights Act,[1] and once again asked for declaratory and injunctive relief. In each count, the plaintiff also specifically requested an order that would place him at the Saginaw Correctional Facility in the disputed sergeant position.

## II

In response to the first amended complaint, the defendants filed a motion for summary disposition, which the circuit court granted on August 12, 1997.

The department's affirmative action plan had been submitted to and approved by the Civil Rights Commission under MCL 37.2210, which provides:

> A person subject to this article may adopt and carry out a plan to eliminate present effects of past discriminatory practices or assure equal opportunity with respect to religion, race, color, national origin, or sex if the plan is filed with the commission under rules of the commission and the commission approves the plan.

The circuit court held that that approval insulated the department from an action under the Civil Rights Act, and dismissed count III of the complaint. The court granted

---

[1] MCL 37.2101 *et seq*.

summary disposition on plaintiff's 42 USC 1983 and Const 1963, art 11, § 5 claims on the ground that the plaintiff lacked standing. Alternatively, the court found that those claims were moot because the department had ceased using the augmented certification lists as part of the hiring process in 1997.[2]

The plaintiff appealed, and the Court of Appeals affirmed, with Judge Markman dissenting.[3] The majority agreed with the circuit court that the Civil Rights Commission's approval of the affirmative action plan protected the department from suit under the Civil Rights Act. It also affirmed the circuit court's conclusion that the plaintiff

---

[2] The circuit court also added the following comment:

> The Court would note parenthetically that even if the Court's analysis of Defendant's race discrimination claims in counts I and II are erroneous, Plaintiff has advanced no documentary proof that Defendant's affirmative action plan has accomplished its goal and despite same continues to be utilized, as the trial court found to be unconstitutional in *Cremonte v State Police*, Livingston Circuit Court/Court of Claims #94-13442-NO; #95-15727, which is cited by Plaintiff in its supplemental authorities. Thus, Plaintiff has not constructed a documentary record to demonstrate that the goals of affirmative action have been met, or exceeded, and the continued use of the plan would "unnecessarily trammel the rights of nonminority employees." *Victorson* [v *Dep't of Treasury*, 439 Mich 131, 140; 482 NW2d 685 (1992)]. See also *Conlin* [v *Blanchard*, 745 F Supp 413, 423 (ED Mich, 1990)] and *Johnson v Transportation Agency*, 480 US 616, 638; 107 S Ct 1442; 94 L Ed 2d 615 (1987).

[3] Unpublished opinion per curiam issued, June 1, 1999 (Docket No. 205603).

5

lacked standing to seek declaratory and injunctive relief under 42 USC 1983 and Const 1963, art 11, § 5.[4]

The plaintiff has filed an application for leave to appeal to this Court. We held the application in abeyance for *Lewis v Michigan*, Docket No. 114241, and *Sharp v City of Lansing*, Docket No. 116171, which have now been decided.[5]

### III

The appeal involves a decision on a motion for summary disposition, which we review de novo. *Hazle v Ford Motor Co*, 464 Mich 456, 461; 628 NW2d 515 (2001). The critical issue in the case—whether the plaintiff has standing—is a question of law, which we also review de novo. *Lee v Macomb Co Bd of Comm'rs*, 464 Mich 726, 734; 629 NW2d 900 (2001).

### IV

The *Sharp* and *Lewis* decisions are not entirely dispositive of this case. In *Lewis*, we held that the judicial branch could not create a money damages remedy for violation of the Equal Protection Clause of the Michigan Constitution. Const 1963, art 1, § 2. The applicability of that principle to this case is limited, however, since the plaintiff is not seeking the benefit of such a judicially created damages remedy. Rather, he primarily seeks injunctive relief.

---

[4] The Court declined to reach the circuit court's alternative or "parenthetical" basis for granting summary disposition.

[5] *Lewis v Michigan*, 464 Mich 781; 629 NW2d 868 (2001); *Sharp v City of Lansing*, 464 Mich 792; 629 NW2d 873 (2001).

Our decision in *Sharp* focused on the statutory safe-harbor defense of § 210 of the Civil Rights Act. *Sharp* makes clear that an employer, like the department in this case, is insulated from liability under the Civil Rights Act where the affirmative action plan in question has been approved by the Civil Rights Commission. However, in *Sharp* we emphasized that that statute does not protect the defendant against other claims:

> But our inquiry does not end there. A state actor is involved. Consequently, the protections provided directly by the state Equal Protection Clause come into play. When an aggrieved plaintiff alleges that a public employer denied his equal protection rights in violation of art 1, § 2, the employer's acts are subject to review under that constitutional provision. Injunctive and declaratory relief are available to restrain any acts found to violate the state Equal Protection Clause. Hence, the mere existence of an approved affirmative action plan does not insulate a state employer, or its plan, from all judicial scrutiny. [464 Mich 800.]

V

The principal basis on which the Court of Appeals upheld the summary disposition was its conclusion that the plaintiff lacked standing. It found that there was no indication that plaintiff would face adverse treatment in the future:

> Here, the substance of plaintiff's complaint deals only with his past rejection. There has been no showing that plaintiff will continue to apply for the sergeant's position at the SCF in the near future or otherwise. Nor does plaintiff indicate that a particular position exists for which he may apply in the future where the DOC's affirmative action policy would also apply. Plaintiff also does not claim to be excluded from any further applicant pool or selection process in applying for any given appointment for which he is qualified.

7

In addition, even if plaintiff had alleged that he was going to apply for a sergeant's position in the immediate future at a desirable location, there is no evidence that the DOC will again use the affirmative action plan and augmented certification lists. To the contrary, on April 25, 1997, the DOC discontinued its use of augmented certification lists. Thus, if plaintiff attempts to apply for another position, the selection process will not use certification lists. Therefore, it is conjectural whether plaintiff will suffer any future injury because of the DOC's affirmative action plan. Accordingly, we find that plaintiff failed to demonstrate a real and immediate threat that he would again suffer similar injury in the future and that the relief sought would redress the future injury.

As we explained in *Lee, supra*, the doctrine of standing has its origin in the requirement that the judiciary address only actual controversies:

> This position followed from the even earlier iteration of the standing doctrine by Justice Campbell in 1859 when, speaking for this Court, he said:

> "By the judicial power of courts is generally understood the power to hear and determine *controversies* between adverse parties, and questions in litigation. [*Daniels v People*, 6 Mich 381, 388 (1859) (emphasis added).]"

> Later, in *Risser v Hoyt*, 53 Mich 185, 193; 18 NW 611 (1884), this Court explained:

> "The judicial power referred to is the authority to hear and decide *controversies*, and to make binding orders and judgments respecting them. [Emphasis added.]" [464 Mich 738.]

In *Lee,* we endorsed the test articulated by the United States Supreme Court in *Lujan v Defenders of Wildlife*, 504 US 555, 560-561; 112 S Ct 2130; 119 L Ed 2d 351 (1992), in which the Court said:

> Over the years, our cases have established

8

that the irreducible constitutional minimum of standing contains three elements. First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) "actual or imminent, not 'conjectural' or 'hypothetical.'" Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court." Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

We concluded in *Lee*:

> In our view, the *Lujan* test has the virtues of articulating clear criteria and establishing the burden of demonstrating these elements. Moreover, its three elements appear to us to be fundamental to standing; the United States Supreme Court described them as establishing the "irreducible constitutional minimum" of standing. We agree. Accordingly, we now join Justice Cavanagh's view [in *Detroit Fire Fighters Ass'n v Detroit*, 449 Mich 629, 651-652; 537 NW2d 436 (1995)] and adopt the *Lujan* test . . . . [464 Mich at 740.]

Judge Markman, dissenting in the Court of Appeals, found the facts of this case to clearly come within the standing requirements. As he explained:

> With respect to count I, plaintiff sues for declaratory relief under 42 USC 1983, namely, a declaration that "said affirmative action policy, the current availability standard, the 'augmented certification' rule and the DOC's affirmative action plans in force in 1994 and thereafter are unconstitutional, null and void . . . ." Here, there is undisputably a "case of actual controversy," in which the parties have adverse interests. *Detroit Base Coalition v Dep't of Social Services*, 431 Mich 172, 191-192; 428 NW2d 335 (1988); MCR 2.605(A). Plaintiff asserts that the government has acted in a manner inconsistent with the federal and state constitutions in carrying outs its affirmative action programs, while defendant denies this.

9

* * *

With respect to count II, plaintiff sues for injunctive relief under Const 1963, art 11, § 5. Such provision, in addition to mandating civil service promotions "exclusively on the basis of merit" and prohibiting decisions undertaken for "religious, racial or partisan purposes," also provides that "[v]iolation of any of the provisions hereof may be restrained or observance compelled by injunctive or mandamus proceedings brought by any citizen of the state." However broadly this provision is to be construed with regard to the rights of "any citizen," it is certainly broad enough to encompass a "citizen" who has been subject to the application of an affirmative action plan—involving at least arguably a departure from the constitutional "merit" standard—and who otherwise has standing to pursue a statutory damages claim. Plaintiff asserts that, but for the dilution of the "merit" standard by defendant's affirmative action policies, he would have obtained the promotion which he has currently been denied.

It may be that changes in the defendants' policies will mean that it is not appropriate to award injunctive relief regarding future conduct. However, we agree with Judge Markman that on its face this is a case in which the plaintiff has standing. He alleges that he was denied a job for which he was qualified and that he would have received but for illegal racial discrimination. This would constitute a concrete, actual injury directly traceable to the challenged action by the defendants. He requests an order placing him in that position. Such an order would redress the injury claimed. *Lujan, supra*, 504 US 561. Whether he is entitled to such relief is a question that must await further proceedings in the circuit court. But, under the principles set forth in our decisions, he has standing to bring this action.

10

This is particularly true of the plaintiff's claim under Const 1963, art 11, § 5. That section establishes the Civil Service Commission, and includes the following provisions relevant to this case:

> No person shall be appointed to or promoted in the classified service who has not been certified by the commission as qualified for such appointment or promotion. No appointments, promotions, demotions or removals in the classified service shall be made for religious, racial or partisan considerations.

> \* \* \*

> Violation of any of the provisions hereof may be restrained or observance compelled by injunctive or mandamus proceedings brought by any citizen of the state.

That provision explicitly gives standing to any Michigan citizen to challenge alleged violations of art 11, § 5. *Michigan Coalition of State Employee Unions v Civil Service Comm*, 465 Mich 212, 219; 634 NW2d 692 (2001). Thus, plaintiff certainly has standing to seek injunctive or mandamus relief against defendants' alleged violations of art 11, § 5.

VI

Because it upheld the summary disposition on the standing issue, the Court of Appeals did not reach the circuit court's alternative mootness theory. The circuit court had said:

> Similarly, this Court alternatively finds that Plaintiff's 42 USC 1983 claim is moot. "An issue is moot where circumstances render it impossible for the reviewing court to grant any relief." *In re Wayne Election Comm*, 150 Mich App 427, 432; 388 NW2d 707 (1986), *lv den* 425 Mich 882 (1986). However, where the issue is of public significance and is likely to recur in the future yet evade judicial review, this Court will entertain the

11

case. *Id.; In re Forfeiture of $53*, 178 Mich App 480, 485; 444 NW2d 182 (1989).

In the present case, Plaintiff requests an injunction to enjoin Defendants from using, implementing, or enforcing an affirmative action plan. Since Defendants have ceased using augmented certification lists as part of their hiring process, it is unlikely that this issue will recur in the future. If it does, Plaintiff and others similarly situated have immediate recourse to declaratory and injunctive relief, and thus are not prejudiced by the court's disposition herein.[6]

However, this ignores the fact that the plaintiff's claim seeks redress for the 1994 decision not to promote him. Further factual development may establish that he is entitled to relief on the ground that that decision was the product of illegal race discrimination, or it may establish that he is not entitled to such relief. However, the fact that the Department of Corrections has apparently discontinued use of the policies that allegedly led to that employment decision does not render moot the controversy regarding the plaintiff's entitlement for redress for the 1994 decision.

The importance of the circuit court's "parenthetical" statement, which the Court of Appeals also did not address, is not clear. It appears to be an at least tentative decision by the circuit court that the plaintiff had not come forward with enough evidence to show that the department's affirmative action plan was not still justified. Given the vagueness of the circuit court's statement in that regard, we cannot

---

[6] The circuit court later said that the same mootness analysis applied to the claim under Const 1963, art 11, § 5.

12

consider sustaining summary disposition for the defendants on that ground. Certainly on the materials presented, it cannot be said that there was no genuine issue of material fact on that question.

VII

The safe-harbor provision of MCL 37.2210 does not insulate the defendants from potential liability under federal law or the Michigan Constitution, and plaintiff has standing to challenge the Department of Corrections' 1994 decision not to promote him. Whether he is entitled to relief requires further factual development in the circuit court. Accordingly, the judgments of the Court of Appeals and the Saginaw Circuit Court are reversed, and the case is remanded to the circuit court for further proceedings.

CORRIGAN, C.J., and CAVANAGH, TAYLOR, and YOUNG, JJ., concurred.

KELLY, J., concurred in the result only.

13

LESLIE G. CRAWFORD,

    Plaintiff-Appellant,

v                                                                    No.  114930

DEPARTMENT OF CIVIL SERVICE,
MEMBERS OF THE CIVIL SERVICE
COMMISSION, DEPARTMENT OF
CORRECTIONS, and DIRECTOR OF
THE DEPARTMENT OF CORRECTIONS,

    Defendant-Appellees.

_____

WEAVER, J. (*concurring*).

I concur in the decision to reverse the judgment of the Court of Appeals and to remand to the circuit court for further proceedings.

I write separately because I continue to disagree with this Court's adoption in *Lee v Macomb Co Bd of Comm'rs*, 464 Mich 726; 629 NW2d 900 (2001) of the federal standing requirements from *Lujan v Defenders of Wildlife*, 504 US 555; 112 S Ct 2130; 119 L Ed 2d 351 (1992).  As I stated in my concurrence in *Lee,* I would not supplement Michigan's traditional rules of standing by adopting the federal test.

In this case, plaintiff has standing under Michigan's

traditional rules.  This Court stated in *House Speaker v State Administrative Bd*, 441 Mich 547, 554; 495 NW2d 539 (1993), that "[s]tanding requires a demonstration that the plaintiff's substantial interest will be detrimentally affected in a manner different from the citizenry at large."  Plaintiff was denied a job for which he was qualified in violation of the prohibition of race-based hiring in Const 1963, art 11, § 5.  Plaintiff has thus clearly demonstrated that he has a substantial interest that has been detrimentally affected in a manner different from the citizenry at large.

MARKMAN, J., took no part in the decision of this case.