*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

RONALD DUPUIS II,

Plaintiff-Appellant,

UNPUBLISHED
May 6, 2021

v

No. 351561
Wayne Circuit Court
LC No. 18-005616-CL

CITY OF HIGHLAND PARK,

Defendant-Appellee.

Before: TUKEL, P.J., and SERVITTO and RICK, JJ.

PER CURIAM.

Plaintiff was employed as a sergeant with the Highland Park Police Department (HPPD). Plaintiff filed this action under the Whistleblower's Protection Act ("WPA"), MCL 15.361 *et seq.*, after defendant, the city of Highland Park, took disciplinary action by initially suspending him and then terminating his employment; plaintiff later was reinstated after a union grievance arbitration proceeding, but in this suit sought back pay and benefits, which the arbitrator declined to order. Plaintiff now appeals as of right the trial court's order granting summary disposition to defendant under MCR 2.116(C)(10). We affirm in part, reverse in part, and remand for further proceedings.

## I. UNDERLYING FACTS

Plaintiff alleges that he was unlawfully retaliated against for his role in the arrest and prosecution of Gregory Yopp (Yopp), the son of Highland Park Mayor Hubert Yopp (the Mayor). According to plaintiff's complaint, in January 2018, an HPPD patrol officer was dispatched to a location in Highland Park and found Yopp slumped over the steering wheel in a vehicle. The vehicle's engine was running and the vehicle was in gear. A young child was in the backseat. The responding officer consulted plaintiff, who advised the officer to arrest Yopp. After arresting Yopp, the officer found marijuana and three prescription pills in his possession. Plaintiff requested a warrant for Yopp for child endangerment, operating a motor vehicle while under the influence of drugs, possession of a controlled substance, driving while license suspended, and driving without proof of insurance. After Yopp's arrest, the Mayor arrived at the police station and was permitted to see his son, who eventually was released to the Mayor's custody.

-1-

In April 2018, plaintiff was disciplined for his role in an incident unrelated to Yopp's arrest. Plaintiff was on duty when a suspect in custody for a homicide, Joseph Gray, ingested a large amount of hand soap. Plaintiff was aware that Gray had been held for 88 hours, well beyond the 48-hour limit, without being charged. According to plaintiff, there was a staff shortage at the time, so he decided to allow emergency medical technicians to take Gray to the hospital without a police escort. After Gray was treated at the hospital, he walked away. The detective in charge of the Gray investigation acknowledged that he lost track of the amount of time Gray had been held in custody and acknowledged that Gray should have been released. Despite the detective taking responsibility for the situation, however, only plaintiff was disciplined for the actions relating to Gray's transportation to the hospital and walking away after treatment. Plaintiff was accused of intentionally releasing a homicide suspect and criminal neglect or dereliction of duty. He was suspended from active duty in April 2018. The matter was referred to the Michigan State Police for an independent investigation to determine if criminal charges were warranted. Michigan State Police Detective Sergeant Craig MacDonald conducted the investigation and concluded that plaintiff did not violate any criminal laws with regard to his decision to authorize Gray's transport to the hospital without a police escort. In fact, MacDonald supported plaintiff's decision because Gray had been held for too long and MacDonald believed that plaintiff may have saved defendant from a lawsuit.

MacDonald's investigation, however, did not address whether plaintiff violated any HPPD rules or policies. In November 2018, plaintiff's employment with the HPPD was terminated for violations of HPPD's policies related to his handling of Gray's transport to the hospital without a police escort. Plaintiff filed a grievance from that decision and, after a hearing before an arbitrator, he was reinstated to his position, but without backpay and benefits for the time he was suspended.

Plaintiff alleged in this action that his disciplinary action in the Gray matter was actually motivated by his involvement in Yopp's arrest. The trial court granted defendant's motion for summary disposition on the ground that the decision to discipline plaintiff was made solely by Police Chief Chester Logan, without any input or involvement of the Mayor, and there was no evidence that plaintiff's involvement in Yopp's arrest was a factor in the disciplinary action.

This appeal followed. After plaintiff filed his appeal, this Court allowed plaintiff to expand the record to present new information regarding the Mayor's role in personnel matters involving the HPPD on two separate occasions. *DuPuis v City of Highland Park*, unpublished order of the Court of Appeals, entered February 16, 2021 (Docket No. 351561); *DuPuis v City of Highland Park*, unpublished order of the Court of Appeals, entered March 31, 2021 (Docket No. 351561).

## II. STANDARD OF REVIEW

A motion for summary disposition under MCR 2.116(C)(10) tests the factual sufficiency of a complaint and is reviewed de novo. *Joseph v Auto Club Ins Ass'n*, 491 Mich 200, 205-206; 815 NW2d 412 (2012). This Court reviews a motion brought under MCR 2.116(C)(10) "by considering the pleadings, admissions, and other evidence submitted by the parties in the light most favorable to the nonmoving party." *Patrick v Turkelson*, 322 Mich App 595, 605; 913 NW2d 369 (2018). "The trial court is not permitted to assess credibility, weigh the evidence, or resolve factual disputes, and if material evidence conflicts, it is not appropriate to grant a motion for summary disposition under MCR 2.116(C)(10)." *Barnes v 21st Century Premier Ins Co*, ___ Mich

App ___, ___; ___ NW2d ___ (2020) (Docket No. 347120); slip op at 4. Summary disposition "is appropriate if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *Patrick*, 322 Mich App at 605. "There is a genuine issue of material fact when reasonable minds could differ on an issue after viewing the record in the light most favorable to the nonmoving party." *Allison v AEW Capital Mgt, LLP*, 481 Mich 419, 425; 751 NW2d 8 (2008). "Only the substantively admissible evidence actually proffered may be considered." *1300 LaFayette East Coop, Inc v Savoy*, 284 Mich App 522, 525; 773 NW2d 57 (2009) (quotation marks and citation omitted). "Circumstantial evidence can be sufficient to establish a genuine issue of material fact, but mere conjecture or speculation is insufficient." *McNeill-Marks v Midmichigan Med Ctr-Gratiot*, 316 Mich App 1, 16; 891 NW2d 528 (2016).

## III. ANALYSIS

### A. THE WPA

Under the WPA, in pertinent part, "[a]n employer shall not discharge . . . an employee . . . because the employee, or a person acting on behalf of the employee, reports . . . a violation or a suspected violation of a law or regulation or rule promulgated pursuant to a law . . . to a public body, unless the employee knows that the report is false . . . ." MCL 15.362. Stated differently, "[t]he WPA provides a remedy for an employee who suffers retaliation for reporting or planning to report a suspected violation of a law, regulation, or rule to a public body." *Anzaldua v Neogen Corp*, 292 Mich App 626, 630; 808 NW2d 804 (2011). "A prima facie case under the WPA arises when (1) the plaintiff was engaged in protected activity as defined by the act, (2) the plaintiff was discharged or discriminated against, and (3) a causal connection exists between the protected activity and the adverse employment decision." *Id*. at 630-631, citing *Shaw v Ecorse*, 283 Mich App 1, 8; 770 NW2d 31 (2009). Only the third element is at issue in this case.

"Because whistleblower claims are analogous to other antiretaliation employment claims brought under employment discrimination statutes prohibiting various discriminatory animuses, they should receive treatment under the standards of proof of those analogous [claims]." *Debano-Griffin v Lake Co*, 493 Mich 167, 175-176; 828 NW2d 634 (2013) (quotation marks and citation omitted; alteration in original). "Absent direct evidence of retaliation, a plaintiff must rely on indirect evidence of his or her employer's unlawful motivations to show that a causal link exists between the whistleblowing act and the employer's adverse employment action." *Id*. at 176. "Direct evidence of retaliation is evidence that, if believed, requires the conclusion that retaliatory animus was 'at least a motivating factor in the employer's actions.' " *Rivera v SVRC Indus, Inc*, 327 Mich App 446, 457; 934 NW2d 286 (2019), quoting *McNeil-Marks*, 316 Mich App at 18. Plaintiff does not rely on direct evidence of retaliation in this case.[1]

---

[1] In his brief on appeal, plaintiff refers to unspecified direct evidence. Plaintiff, however, fails to make any argument clarifying his supposed claim that direct evidence exists in this case. As such, the argument is abandoned. See *Cheesman v Williams*, 311 Mich App 147, 161; 874 NW2d 385 (2015) ("An appellant may not merely announce a position then leave it to this Court to discover

In light of the lack of direct evidence of retaliation, "this case requires application of the burden-shifting framework set forth in *McDonnell Douglas* [*Corp v Green*, 411 US 792; 93 S Ct 1817; 36 L Ed 2d 668 (1973)]." *Debano-Griffin*, 493 Mich at 176. "A plaintiff may present a rebuttable prima facie case on the basis of proofs from which a factfinder could infer that the plaintiff was the victim of unlawful retaliation." *Id*. (quotation marks, citation, emphasis, and alteration omitted). "[W]hen a plaintiff presents circumstantial evidence of retaliation, the burden then shifts to the defendant to rebut the presumption of a causal connection by articulating a legitimate business reason for its adverse employment action." *Rivera*, 327 Mich App at 458. Finally, "[i]f the defendant offers such a reason, the burden shifts back to the plaintiff to show that a genuine issue of material fact still exists by showing that a reasonable fact-finder could still conclude that the plaintiff's protected activity was a motivating factor for the employer's adverse action . . . ." *Id*. (quotation marks and citation omitted). For example, a plaintiff could present evidence "that the employer's articulated legitimate reason was a pretext disguising unlawful animus." *Id*. (quotation marks and citation omitted).

Consequently, we must determine whether plaintiff provided sufficient circumstantial evidence that he was fired for authorizing Yopp's arrest. When making such a case, a "[p]laintiff must show something more than merely a coincidence in time between protected activity and adverse employment action." *West v Gen Motors Corp*, 469 Mich 177, 186; 665 NW2d 468 (2003). In other words, "[t]emporal proximity, without more, is insufficient to prove a causal connection between the protected activity and any adverse employment action." *Rivera*, 327 Mich App at 466.

Plaintiff satisfied the first two elements of his WPA claim by presenting evidence of protected activity (i.e., his involvement in Yopp's arrest), and evidence of an adverse employment action (i.e., his suspension and later termination before eventually being reinstated). At issue in this case is whether plaintiff can establish a causal connection between this protected activity and the adverse employment action that supports an inference of unlawful retaliation. Defendant presented evidence that plaintiff's suspension was solely the result of his handling of the Gray matter in April 2018, and that the Mayor was not involved in that disciplinary decision. Although plaintiff produced evidence to show that he had a history with the Mayor and that the Mayor might have had a reason to retaliate against plaintiff for his involvement in Yopp's arrest, plaintiff did not produce any evidence at the trial court level suggesting that the Mayor was involved in the disciplinary action against plaintiff. Chief Logan was an appointee of the Mayor, but there was no evidence to support an inference that the Mayor influenced Chief Logan's decision to suspend and subsequently terminate plaintiff. Indeed, according to Chief Logan's affidavit, the Mayor was not involved in plaintiff's disciplinary action.

At the trial court level, plaintiff relied principally on evidence suggesting that defendant may have targeted him for disciplinary action. MacDonald, the State Police officer who conducted the independent investigation of the Gray matter, explained that he believed Chief Logan and Lieutenant Jamille Edwards had singled plaintiff out for disciplinary action in that incident because

_____

and rationalize the basis for the appellant's claims; nor may an appellant give an issue only cursory treatment with little or no citation of authority.").

although other officers were also involved and Detective Menge admitted that he was at fault for keeping Gray in custody too long, plaintiff was the only officer disciplined as a result of the incident. Plaintiff, however, also had a record of prior disciplinary actions, which could explain why defendant decided to pursue disciplinary action only against plaintiff in the Gray matter, without regard to his prior involvement in the arrest of Yopp. It was speculative for plaintiff to claim that defendant's motive for trying to remove him from his position was due to his involvement in Yopp's arrest.

The record, however, has been expanded on appeal. The new information brought to our attention demonstrates the Mayor's routine involvement in HPPD employment matters. Such evidence would allow a jury to infer that the Mayor was behind plaintiff's disciplinary action and the Mayor's relationship to Yopp presents a clear motive for retaliation. At the trial court level, defendant had submitted an affidavit from Police Chief Logan, who averred that the Mayor was not consulted on disciplinary decisions regarding midlevel employees of the HPPD, and was not involved in the decision to discipline plaintiff. But plaintiff's new evidence shows that the Mayor, who had oversight over Chief Logan, was regularly involved in personnel matters in the HPPD, including interviews, promotions, and disciplinary proceedings. According to new Police Chief Kevin Coney, who was formerly the fire chief, the Mayor had been similarly involved in employment decisions in that department as well. Furthermore, plaintiff has been terminated by the HPPD, again, during the pendency of this appeal. The mayor wrote and signed the letter terminating plaintiff.[2] This evidence supports an inference that the Mayor had a history of involving himself in personnel decisions for midlevel employees like plaintiff.

We believe that this new evidence establishes a question of fact regarding whether the Mayor was involved in plaintiff's disciplinary action. Given the evidence suggesting that the reasons for plaintiff's disciplinary action in the Gray incident were questionable, we believe there are genuine issues of material fact regarding whether that disciplinary action was brought in retaliation for plaintiff's involvement with Yopp's arrest. This new evidence also distinguishes this case from *Poppy v City of Willoughby Hills*, 96 Fed Appx 292 (CA 6, 2004),[3] in which a city

---

[2] Plaintiff has actually been terminated by the HPPD twice during the pendency of this appeal. The first termination letter was written and signed by defendant's human resources director, but plaintiff was later reinstated following an arbitration proceeding. Plaintiff's reinstatement lasted less than one year before the most recent termination. The most recent termination resulted from plaintiff dry firing his weapon in the office. The incident resulted in Chief Coney recommending terminating plaintiff's employment with the HPPD. The mayor apparently agreed and fired plaintiff shortly thereafter.

[3] We address *Poppy* here for the sole reason that both parties extensively address it in their briefs. *Poppy* was decided by the United States Court of Appeals for the Sixth Circuit and, therefore, lacks precedential authority. See *Sharp v City of Lansing*, 464 Mich 792, 802-803; 629 NW2d 873 (2001) ("[F]ederal case law can only be persuasive authority, not binding precedent, in resolving the present case, which involves only questions of state law."). Similarly, in their briefs on appeal, the parties each relied extensively on unpublished opinions from this court. "An unpublished opinion is not precedentially binding under the rule of stare decisis." MCR

mayor with a motive to retaliate lacked any authority or control over the terms and conditions of the plaintiff's employment.

Because defendant offered plaintiff's involvement in authorizing Gray's transfer to the hospital without a police escort as a legitimate reason for the adverse employment action, we also consider whether plaintiff can establish that this matter was a pretext for unlawful retaliation.

Once a plaintiff establishes a prima facie case of retaliation, a defendant may still be entitled to summary disposition "if it offers a legitimate reason for its action and the plaintiff fails to show that a reasonable fact-finder could still conclude that the plaintiff's protected activity was a 'motivating factor' for the employer's adverse action." *Debano-Griffin,* 493 Mich at 175-176. As explained by our Supreme Court:

> [T]here are three ways a plaintiff can establish that a defendant's stated legitimate, nondiscriminatory reasons are pretexts: (1) by showing the reasons had no basis in fact, (2) if they have a basis in fact, by showing that they were not the actual factors motivating the decision, or (3) if they were factors, by showing that they were jointly insufficient to justify the decision. The soundness of an employer's business judgment, however, may not be questioned as a means of showing pretext. [*Id.* at 180 (citation omitted).]

Defendant argues that plaintiff's decision to authorize Gray transport to the hospital without a police escort in April 2018 was a legitimate reason for its disciplinary action against plaintiff, unrelated to plaintiff's involvement in Yopp's arrest. As previously explained, however, plaintiff introduced evidence that his role in Gray's transportation to the hospital without a police escort was the subject of an independent investigation by the State Police. MacDonald, the officer who conducted that investigation, noted that his investigation established that plaintiff was the only officer disciplined as a result of the Gray matter, despite the fact that other officers were involved and Detective Menge admitted that he was at fault for keeping Gray in custody too long. MacDonald concluded that plaintiff did not violate any criminal laws when releasing Gray.[4] Although MacDonald did not investigate whether plaintiff's actions violated any HPPD rules or policies, MacDonald concluded that he would have made the same decision that plaintiff did—meaning sending Gray to the hospital without a police escort—given the circumstances. These

---

7.215(C)(1). While unpublished opinions can be instructive or persuasive, *Paris Meadows, LLC v City of Kentwood*, 287 Mich App 136, 145; 783 NW2d 133 (2010), we find reliance on them unnecessary in this case because published caselaw with precedential force clearly establishes the requirements for a WPA claim. Consequently, we decline to address the unpublished cases the parties relied on.

[4] We express no opinion regarding the admissibility of MacDonald's opinions regarding defendant's actions that he investigated, but we note that when viewing the record in the light most favorable to plaintiff, a rational jury could come to the same conclusions that MacDonald reached. It is the underlying facts on which MacDonald's opinion is based, rather than the fact that he reached conclusions, on which our ruling is based.

facts were sufficient to establish a genuine dispute of material fact regarding whether the proffered reason for plaintiff's discipline was a pretext for unlawful retaliation, contrary to the WPA.

The evidence that other officers were also involved in Gray's transport to the hospital without a police escort but were not disciplined, and that Detective Menge admitted to being at fault for keeping Gray in custody too long, could allow a jury to find that plaintiff's alleged role in that matter was not the actual motivating reason for the decision to discipline plaintiff. The fact that an independent investigator concluded that, under the circumstances, he would have made the same decision regarding Gray's transport to the hospital without a police escort also supports this conclusion. Although an arbitrator concluded that plaintiff had violated HPPD rules and policies because an officer was available who could have accompanied Gray to the hospital, the arbitrator also found that termination was too harsh because of mitigating circumstances. Even if this evidence could allow a fact-finder to find that there was some justification for disciplining plaintiff, it could also allow the fact-finder to find that plaintiff's actions in that matter were insufficient to justify the disciplinary measures that were taken, and that those measures were motivated in part by a retaliatory motive. Accordingly, there is a genuine dispute of material fact regarding whether the proffered reason for the adverse employment action was a pretext for unlawful retaliation. This dispute of material fact precludes any grant of summary disposition at this time.

## B. COLLATERAL ESTOPPEL

Although plaintiff also argues that the doctrine of collateral estoppel as applied to the arbitrator's findings does not bar his WPA action, the trial court decided this issue in plaintiff's favor. We agree that collateral estoppel does not bar plaintiff's claim. As the trial court observed, although this case and the arbitration proceeding involved similar issues, the issues were not identical. The central issues in this case were whether the decisions to discipline plaintiff for his role in authorizing Gray's transfer to the hospital without a police escort, including the extent of any discipline, were made in retaliation for plaintiff's involvement in Yopp's arrest. Those issues were not litigated before or decided by the arbitrator.[5] Accordingly, collateral estoppel does not apply. See *Monat v State Farm Ins Co*, 469 Mich 679, 682; 677 NW2d 843 (2004) (quotation marks and citation omitted) (holding that the first element of collateral estoppel requires that "a question of fact essential to the judgment must have been actually litigated and determined by a valid and final judgment").

---

[5] Indeed, the arbitrator considered whether the Gray matter established sufficient grounds to terminate plaintiff, but it did not consider whether Yopp's arrest or the Mayor were factors in the decision to terminate plaintiff.

## V.  CONCLUSION

For the reasons stated in this opinion, we affirm in part, reverse in part, and remand for further proceedings.  We do not retain jurisdiction.  Plaintiff, as the prevailing party, may tax costs pursuant to MCR 7.219.

/s/ Jonathan Tukel
/s/ Deborah A. Servitto
/s/ Michelle M. Rick