# STATE OF MICHIGAN

# COURT OF APPEALS

---

GINA K. HENSLEY,

        Plaintiff-Appellee,

v

BOTSFORD GENERAL HOSPITAL and DR.
JEFFREY D. JOSHOWITZ,

        Defendants-Appellants.

UNPUBLISHED
January 12, 2016

No. 323805
Oakland Circuit Court
LC No. 2013-136596-CD

---

Before: TALBOT, C.J., and CAVANAGH and K. F. KELLY, JJ.

PER CURIAM.

Defendants appeal by leave granted the trial court's order denying in part their motion for summary disposition of plaintiff's claim for unlawful retaliation under the Michigan Civil Rights Act (CRA), MCL 37.2101 *et seq.* We reverse the trial court's order to the extent that it denied summary disposition of the retaliation claim and remand for entry of judgment in favor of defendants on that claim.

In June 2012, plaintiff began working for Botsford General Hospital ("Botsford") in an off-campus clinic run by Dr. Jeffery D. Joshowitz, with two other female employees. Plaintiff's job included working at the front desk, greeting and assisting patients, and answering the telephone. Plaintiff alleged that Dr. Joshowitz and her two female coworkers engaged in inappropriate talk of a sexual nature on almost a daily basis. Some of the discussions were about sexual paraphernalia that Dr. Joshowitz allegedly kept in his office or displayed on his telephone. Plaintiff alleged that Dr. Joshowitz also made sexually suggestive or lewd comments to her and other women. On one occasion, Dr. Joshowitz was counseled after a female computer technician complained that he had made an inappropriate sexual comment and gestured toward his genitals.

Plaintiff admitted at her deposition that she usually just "tuned out" the inappropriate conversations and remarks, and kept to herself at work. On a couple of occasions, however, plaintiff voiced her displeasure to comments directed at her. Plaintiff explained that her female coworkers discussed names they had given to their vaginas, and they told plaintiff that her vagina should be named "Taco." The female coworkers mentioned that name when a male pharmaceutical representative was visiting the office while Dr. Joshowitz was present. After plaintiff told her coworkers not to use that term, no one called her by that name again. Plaintiff explained that on another occasion, Dr. Joshowitz, who usually called her "Ms. G.," instead

-1-

referred to her as "G-spot." Plaintiff told Dr. Joshowitz that she did not like being called that name, and she admitted that he never used that term again.

Plaintiff admitted that she was frequently disciplined while working at Dr. Joshowitz's office, including for excessive personal telephone usage, excessive tardiness, and patient complaints of rudeness. Faith Bazzell, the team leader in the office, evaluated plaintiff's performance and found that she had performed poorly from the beginning. Dr. Joshowitz expressed his displeasure to Bazzell about plaintiff's poor performance, and he later expressed his desire that she be fired. While Bazzell was hopeful that plaintiff's performance would improve after her performance evaluation on March 20, 2013, her performance continued to suffer. On April 2, 2013, Bazzell met with plaintiff to go over a list of matters with patients that plaintiff had handled incorrectly. Plaintiff became upset and angry, and then sent an e-mail to the practice administrator, Amy Bone. The e-mail stated:

> Good morning Amy,
>
> I would like to ask you if I am able to transfer to another location within Botsford with a write up? I am not happy here at this office, I have been working in the hospital setting doing pretty much the same job, for over 14 years, and I have never gotten called into the office, given verbal warnings and gotten write ups the way that I have here at this office. There is a lot of unacceptable/inappropriate behavior that goes on here and I don't make a fuss about any of it, but I am being treated unfairly and I do not have the stress capacity to handle it any longer. I am worried that I will end up getting fired due to keep [sic] getting write ups.
>
> Can you please tell me what I can do.
>
> Thanks,
>
> Gina

Bazzell provided documentation to the human resources department regarding plaintiff's performance, but was not involved in deciding what employment action would follow.

Bone admitted that Dr. Joshowitz told her that he wanted plaintiff fired or gone from his practice, because of her performance issues and the number of patient complaints. On April 4, 2013, Bone met with Lisa Garner, a human resources business partner for Botsford. Garner advised Bone to take steps toward terminating plaintiff's employment. Bone and Garner discussed plaintiff's April 2 e-mail, but were not aware of the nature of any inappropriate or unacceptable behavior occurring in the office.

Although there were discussions about offering plaintiff additional training in customer service skills, Botsford's vice president of human resources, Barbara Palmer, advised that the number of patient complaints was serious enough to warrant termination of her employment. On April 9, 2013, plaintiff was advised that her employment was being terminated for both violating customer service standards and failing to meet acceptable work standards.

-2-

Plaintiff thereafter filed this action against Botsford Hospital and Dr. Joshowitz, alleging both sexual harassment and unlawful retaliation under the CRA. Defendants filed a motion for summary disposition with respect to both claims. The trial court granted the motion in part and dismissed the sexual harassment claim pursuant to MCR 2.116(C)(7), because it was not filed within a 180-day contractual limitations period, but denied the motion with respect to the retaliation claim, concluding that it was not barred by the 180-day limitations period, thereby precluding summary disposition under MCR 2.116(C)(7), and that there were "genuine issues of material fact related to whether defendants . . . conspired to retaliate or discriminate against plaintiff because she opposed a violation of the [CRA]," thereby precluding summary disposition under MCR 2.116(C)(10).

On appeal, defendants challenge the trial court's denial of their motion for summary disposition of the retaliation claim under MCR 2.116(C)(10). A trial court's summary disposition decision is reviewed de novo. *Spiek v Dep't of Transp*, 456 Mich 331, 337; 572 NW2d 201 (1998). A motion under MCR 2.116(C)(10) tests the factual support for a claim. *Babula v Robertson*, 212 Mich App 45, 48; 536 NW2d 834 (1995). A reviewing court must consider the pleadings, affidavits, depositions, admissions, and other documentary evidence submitted by the parties. MCR 2.116(G)(5). Summary disposition should be granted if, except as to the amount of damages, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Babula*, 212 Mich App at 48.

The CRA prohibits not only discriminatory conduct, but also provides that "[t]wo or more persons shall not conspire to, or a person shall not" "[r]etaliate or discriminate against a person because the person has opposed a violation of this act, or because the person has made a charge, filed a complaint, testified, assisted, or participated in an investigation, proceeding, or hearing under this act." MCL 37.2701(a). The purpose of MCL 37.2701 is "to protect access to the machinery available to seek redress for civil rights violations and to protect the operation of that machinery once it has been engaged." *Meyer v City of Ctr Line*, 242 Mich App 560, 571-572; 619 NW2d 182 (2000), quoting *Booker v Brown & Williamson Tobacco Co, Inc*, 879 F2d 1304, 1313 (CA 6, 1989). A retaliation claim requires that the defendant must have specifically retaliated against the plaintiff for conduct that is protected by the CRA. *Garg v Macomb Co Community Mental Health Servs*, 472 Mich 263, 272; 696 NW2d 646, amended 473 Mich 1205 (2005).

Plaintiff relies on circumstantial or indirect evidence of retaliation to support her claim. When proceeding on the basis of circumstantial or indirect evidence, the plaintiff may establish a rebuttable prima facie case by presenting evidence that would allow a factfinder to infer that the plaintiff was the victim of unlawful discrimination. *Sniecinski v Blue Cross & Blue Shield of Mich*, 469 Mich 124, 133-134; 666 NW2d 186 (2003). To establish a prima facie claim for retaliation, a plaintiff is required to prove (1) that she engaged in a protected activity, (2) that this was known by the defendant, (3) that the defendant took an employment action that was adverse to plaintiff, and (4) that there was a causal connection between the protected activity and the adverse employment action. *Garg*, 472 Mich at 273. Once a prima facie case has been established, the burden of production shifts to the defendant to articulate a legitimate business reason for the discharge. *Roulston v Tendercare, Inc*, 239 Mich App 270, 281; 608 NW2d 525 (2000). If the defendant produces evidence establishing the existence of a legitimate reason for the discharge, the plaintiff must have the opportunity to prove that the legitimate reason offered

by the defendant was not the true reason, but was only a pretext for the discharge. *Id*. The plaintiff can prove pretext either directly by showing that a retaliatory reason more likely motivated the employer, or indirectly by showing that the employer's proffered explanation is unworthy of credence. *Id*.

> A "mere pretext" may be proved (1) by showing that the reason(s) had no basis in fact, (2) if the reason(s) had a basis in fact, by showing that they were not actual factors motivating the decision, or (3) if the reason(s) were motivating factors, by showing that they were jointly insufficient to justify the decision. However, the soundness of an employer's business judgment may not be questioned as a means of showing pretext. Moreover, unfairness will not afford a plaintiff a remedy unless the unfair treatment was because of . . . discrimination. [*Meagher v Wayne State Univ*, 222 Mich App 700, 712; 565 NW2d 401 (1997) (internal citations omitted).]

Although plaintiff's termination qualifies as an adverse employment action, *Peña v Ingham Co Rd Comm*, 255 Mich App 299, 312; 660 NW2d 351 (2003), we conclude that the trial court erred in ruling that there were genuine issues of material fact regarding the remaining elements of a claim for retaliation.

Plaintiff failed to establish that she was engaged in protected activity at the time of her discharge. MCL 37.2701(a) defines the type of activity protected under the CRA. It provides that retaliation is prohibited against a person who "has opposed a violation of" the CRA or "because the person has made a charge, filed a complaint, testified, assisted, or participated in an investigation, proceeding, or hearing under" the CRA. In *Booker*, 879 F2d at 1312, the Sixth Circuit, applying the Michigan CRA, explained that a retaliation claim can be based on either opposing a violation of the act (the "opposition clause") or by filing a complaint with the employer or participating in proceedings under the CRA (the "participation clause"). Claims based on the "participation clause" are generally broader and afforded more protection. *Id*. The "opposition clause" does not extend to protect all opposition activity. *Id*.

It is undisputed that plaintiff did not file a complaint under the CRA before she was terminated, nor did she testify, assist, or participate in any investigation, proceeding, or hearing under the CRA. Plaintiff claims that she opposed a violation of the CRA, or made a "charge" under the act, in two ways: (1) by objecting to inappropriate or offensive sexual comments or actions when they occurred, and (2) by sending the email to Bone on April 2, 2013, in which she complained about inappropriate behavior.

Plaintiff testified at her deposition that she sometimes spoke up when she or her female coworkers made offensive comments, such as referring to her as "G-spot" or "Taco." Plaintiff argues that it was enough that Dr. Joshowitz was aware of plaintiff's objections to the comments to show that she opposed a violation of the CRA. We disagree. Although plaintiff objected to the comments by her coworkers, she never expressed that she felt the comments were illegal or amounted to sexual harassment. Plaintiff's mere verbal objections to her coworkers' remarks are insufficient to convey that she was opposing a violation of the CRA. See *Cremonte v Mich State Police*, 232 Mich App 240, 244 n 4; 591 NW2d 261 (1998) (where the plaintiff's writings to his superiors did not raise the specter of a discrimination complaint, nor did they contain any hint of

-4-

any illegality on the part of the defendant, the plaintiff had no evidence that he had opposed a violation of the CRA), and *Barrett v Kirtland Community College*, 245 Mich App 306, 319; 628 NW2d 63 (2001) (to make a "charge" under the CRA, the employee must "clearly convey to an objective employer that the employee is raising the specter of a claim of unlawful discrimination pursuant to the CRA").

Plaintiff's e-mail to Bone, in which she expressed that there is "a lot of unacceptable/inappropriate behavior that goes on" at the workplace, is also insufficient to establish either that plaintiff was opposing a violation of the CRA, or that she was making a charge under the CRA. In *Booker*, 879 F2d at 1313, the court explained:

> [W]e hold that a vague charge of discrimination in an internal letter or memorandum is insufficient to constitute opposition to an unlawful employment practice. An employee may not invoke the protections of the Act by making a vague charge of discrimination. Otherwise, every adverse employment decision by an employer would be subject to challenge under either state or federal civil rights legislation simply by an employee inserting a charge of discrimination. In our view, such would constitute an intolerable intrusion into the workplace.

Plaintiff's generalized complaint of "unacceptable/inappropriate behavior" did not refer to any unlawful behavior, or reference any specific activity or conduct within the ambit of the CRA. Thus, it is insufficient to constitute opposition to an unlawful employment practice.

Plaintiff's e-mail to Bone also fails to qualify as a "charge" under the CRA. In *Barrett*, 245 Mich App at 318-320, this Court explained that vague references to unspecified complaints about working conditions are insufficient to constitute a "charge" under the CRA:

> Plaintiff did not take any action that could be construed as a "charge" under the act. An employee need not specifically cite the CRA when making a charge under the act. However, the employee must do more than generally assert unfair treatment. See *Mitan v Neiman Marcus*, 240 Mich App 679, 682; 613 NW2d 415 (2000) (holding complaints amounting to generic claims of "job discrimination" did not qualify as a charge made under the Persons with Disabilities Act, MCL 37.1101 *et seq*.). The employee's charge must clearly convey to an objective employer that the employee is raising the specter of a claim of unlawful discrimination pursuant to the CRA. *McLemore v Detroit Receiving Hosp & Univ Medical Center*, 196 Mich App 391, 396; 493 NW2d 441 (1992). Plaintiff's oral complaint to Franke in January 1994 failed to meet this standard. Plaintiff alleges unlawful discrimination because of sex. According to plaintiff, he complained to Franke that Vajda had severely limited or closed the line of communication between Vajda and plaintiff. Plaintiff further claimed Vajda had implemented policies that were enforced only with respect to plaintiff. Plaintiff asserted Vajda's conduct changed after Vajda discovered plaintiff and Goshorn were involved romantically. Plaintiff never complained that he was subjected to any physical or verbal conduct of a sexual nature relating to either plaintiff or Goshorn. Nor did plaintiff complain that he was treated differently because of his gender. Under these circumstances, an objective employer could

-5-

not conclude that plaintiff was raising the specter of a claim pursuant to the CRA. Rather, the evidence merely established that plaintiff was asserting generic, non-sex-based complaints regarding his working conditions and that those complaints were not based on sex. [Footnote omitted.]

See also *Booker*, 879 F2d at 1313.

Plaintiff's vague reference to unspecified "unacceptable/inappropriate behavior" does not refer to sexual harassment or conduct of a sexual nature, or conduct believed to be illegal. The email would not convey to an objective employer that plaintiff was raising the specter of a claim of unlawful conduct pursuant to the CRA.

For the foregoing reasons, the trial court erred in ruling that there was a genuine issue of material fact regarding whether plaintiff was engaged in protected activity under the CRA. Because plaintiff cannot prove the first element of a claim for retaliation, that she was engaged in protected activity at the time of her termination, the trial court erred in denying defendants' motion for summary disposition on the retaliation claim.

Plaintiff acknowledges that she may not be able to prove that those in the human resources department who ultimately made the decision to terminate her employment, particularly Barbara Palmer, were aware of the sexual harassment, but argues that this deficiency should not be fatal to her retaliation claim because she can prove that Palmer and others in the human resources department acted at the behest of Dr. Joshowitz in terminating her employment. Plaintiff relies on the "cat's paw" theory, in which federal courts have found direct evidence of discrimination when a supervisor engages in a discriminatory act and the act influences another supervisor to make an employment decision adverse to the plaintiff. See *Staub v Proctor Hosp*, 562 US 411, 415-416; 131 S Ct 1186; 179 L Ed 2d 144 (2011). Even assuming, however, that Dr. Joshowitz exercised some supervisory authority over plaintiff, that theory does not apply to plaintiff's claim because, as previously discussed, plaintiff failed to show that Dr. Joshowitz was aware that plaintiff had opposed sexual harassment in the office before she was terminated.

Defendants also argue that they were entitled to summary disposition because there is no evidence to support a causal connection between any protected activity under the CRA and the decision to terminate plaintiff's employment. We agree with defendants' argument on this point as well. To establish a causal connection, the plaintiff must show that her participation in the protected activity was a "significant factor" in the employer's adverse employment action, not merely that there was a causal link between the two events. *Barrett*, 245 Mich App at 315.[1]

---

[1] Defendants urge this Court to apply *Univ of Texas Southwestern Med Ctr v Nassar*, ___ US ___; 133 S Ct 2517, 2525; 186 L Ed 2d 503 (2013), and require that plaintiff prove that the adverse employment action would not have occurred "but for" the defendant's conduct. As applied to this case, however, we conclude that the result would be the same under either standard.

To prove causation, the plaintiff is required to show something more than a coincidence in timing between the protected activity and the adverse employment action. *Garg*, 472 Mich at 286. In *Rymal v Baergen*, 262 Mich App 274, 303; 686 NW2d 241 (2004), this Court explained that

> [a] causal connection can be established through circumstantial evidence, such as close temporal proximity between the protected activity and adverse actions, as long as the evidence would enable a reasonable fact-finder to infer that an action had a discriminatory or retaliatory basis. [Citations omitted.]

The deposition testimony established that no one involved in the disciplinary process was aware of plaintiff's allegations of sexual harassment until after the decision was made to terminate her employment. Plaintiff admitted that she did not complain to Bone, and Palmer was the person who ultimately made the decision to terminate plaintiff's employment. Garner also was not aware of those claims until plaintiff told her at the discharge meeting, after plaintiff had already been informed that she was being terminated, about Dr. Joshowitz calling her "G-spot."

Furthermore, at the time plaintiff wrote her email in April 2013, she acknowledged that she was already subject to disciplinary action based on her job performance. In addition, plaintiff's email only made vague references to inappropriate conduct; it did not refer to any violation of the CRA, or even mention sexual harassment or inappropriate conduct of a sexual nature. Plaintiff also did not mention her claims of sexual harassment at any point while she was subject to disciplinary action, or before the decision was made to terminate her employment. Thus, plaintiff cannot show a causal connection between her email and the termination of her employment sufficient to raise a genuine issue of material fact regarding a causal connection between any alleged protected activity and the termination of her employment.

Although plaintiff argues that defendants' reasons for terminating her employment were a mere pretext for discrimination, we need not address that issue because plaintiff failed to establish a prima facie claim of retaliation in the first instance.

In conclusion, we reverse in part the trial court's July 21, 2014 order to the extent that it denied defendants' motion for summary disposition of plaintiff's retaliation claim under MCR 2.116(C)(10), and we remand for entry of judgment in favor of defendants on that claim.

Reversed in part and remanded. We do not retain jurisdiction.

/s/ Michael J. Talbot
/s/ Mark J. Cavanagh
/s/ Kirsten Frank Kelly

-7-